[No. S033892. May 4, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
RONNIE BRUNER, Defendant and Appellant.

**COUNSEL**

Carol G. Arnold and Richard B. Lennon for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Marc E. Turchin, Susan L. Frierson and Andrew D. Amerson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BAXTER, J.**—Penal Code section 2900.5 provides that a convicted person shall receive credit against his sentence for all days spent in custody, including presentence custody (subd. (a)), but "*only* where the custody to be credited is attributable to proceedings related to the *same conduct* for which the defendant has been convicted" (subd. (b), italics added). The statute's application is clear when the conduct that led to the conviction and sentence was the sole cause of the custody to be credited. But difficult problems arise when, as often happens, the custody for which credit is sought had multiple, unrelated causes.

Here we confront one of these "multiple restraint" issues. Convicted of cocaine possession, defendant received a prison sentence "concurrent" to a term he was already serving for violation of his parole in another case. His custody as a parole violator was based in part on the same drug incident that led to the later conviction, but also upon additional, unrelated grounds. Defendant seeks credit against his drug sentence for time already served and credited on the parole term.

On similar facts, *In re Atiles* (1983) 33 Cal.3d 805 [191 Cal.Rptr. 452, 662 P.2d 910] (*Atiles*) held that duplicate credit is due whenever the conduct at issue was "a" basis for the presentence custody, even if not the only basis. The issue is whether application of *Atiles*'s relaxed causation standard to the circumstances of this case runs contrary to "strict causation" principles we established earlier in *In re Rojas* (1979) 23 Cal.3d 152 [151 Cal.Rptr. 649, 588 P.2d 789] (*Rojas*), and later in *In re Joyner* (1989) 48 Cal.3d 487 [256 Cal.Rptr. 785, 769 P.2d 967] (*Joyner*).

Citing *Atiles*, the Court of Appeal reversed the trial court's denial of credit. This unpublished ruling contravenes the unanimous weight of recent published decisions which hold, under *Joyner*, that a defendant cannot obtain credit for confinement prior to his sentence if he cannot prove the conduct which led to the sentence was a dispositive, or "but for," cause of the presentence custody.

We conclude that when presentence custody may be concurrently attributable to two or more unrelated acts, and where the defendant has already received credit for such custody in another proceeding, the strict causation rules of *Joyner* should apply. Here, defendant received credit for all presentence custody in his parole revocation proceeding, and he has failed to demonstrate that but for the cocaine possession leading to his current sentence, he would have been free, or at least bailable, during that presentence period. Hence, he is not entitled to duplicative credit against the

current sentence. We will therefore reverse the judgment of the Court of Appeal.

## FACTS

In March 1991, defendant was released on parole after serving a prison term for armed robbery. A warrant subsequently issued for defendant's arrest on three alleged parole violations: absconding from parole supervision, theft of a credit card, and cocaine use based on a positive urine test. On May 25, 1991, parole agents went to a residence to arrest defendant for these violations. During the search incident to defendant's arrest, a substantial quantity of rock cocaine was found on his person.

At the time of his arrest, defendant was cited for the cocaine possession, then released on his own recognizance on that charge. However, he remained in custody under a parole hold pending disposition of his parole status. On July 25, 1991, the Board of Prison Terms (Board) revoked defendant's parole on the basis of the three earlier violations, plus his possession of cocaine at the time of his arrest. A prison term of 12 months was imposed. Defendant received full credit against this term for the time spent in jail custody between May 25 and July 25.[1]

While defendant was serving his parole revocation term, a criminal information was filed charging defendant with the May 25 cocaine possession. (Health & Saf. Code, § 11350, subd. (a).) The information also alleged an enhancement based on defendant's prior prison term for robbery. (Pen. Code, § 667.5, subd. (b).)[2] On January 3, 1992, defendant entered a plea of guilty on the possession charge and admitted the enhancement.

On February 2, 1992, the court struck the enhancement and imposed the lower term of 16 months for the drug offense. The court failed to specify whether the new term would be concurrent with, or consecutive to, the revocation term. Accordingly, it became a concurrent sentence by operation

---

[1]The probation officer's report reflects that on July 25, 1991, defendant received a 12-month parole revocation term, and that "[h]is expected parole [release] date is May 25, 1992." The inference is that the 12-month period was measured from May 25, 1991, the date defendant was taken into custody on parole violation charges. Title 15 of the California Code of Regulations, section 2635.1, subdivision (c) expressly mandates that confinement pursuant to a parole hold be credited to a subsequent revocation term. (See *In re Bustos* (1992) 4 Cal.App.4th 851, 854, fn. 3 [5 Cal.Rptr.2d 767].)

[2]All further unlabeled statutory references are to the Penal Code.

of law. (§ 669, 2d par.)[3] The court specifically found that defendant was not entitled to presentence credit.

Defendant appealed. He urged that under section 2900.5, he was entitled to credit against his new sentence for time spent in custody on the revocation matter between May 25, 1991, and February 2, 1992.

A majority of the Court of Appeal, Second District, Division Six, agreed in part with defendant's argument. The majority reasoned as follows: defendant's custody from May 25, 1991, until July 25, 1991, was caused entirely by the parole hold, which in turn was based solely on the three pre-arrest violations. Hence, defendant was not entitled to credit against his criminal sentence for this initial period of custody. However, the formal revocation of defendant's parole on July 25, 1991, was grounded in part on the new incident of cocaine possession. This incident thus formed "a basis" for his custody from that time forward. Under *Atiles, supra,* 33 Cal.3d 805, all days of custody between July 25, 1991, and February 2, 1992, were therefore "attributable" to the "same conduct" which led to his new criminal sentence and must accordingly be credited to that sentence.

In dissent, Justice Yegan reasoned as follows: *Atiles* was overruled sub silentio by the "strict causation" test later announced in *Joyner, supra,* 48 Cal.3d 487. Under the *Joyner* test, defendant could not qualify for presentence credit absent proof that his cocaine possession was the *sole* cause of his confinement before February 2, 1992. Here, the other matters leading to defendant's parole arrest were also cited as grounds for the revocation, and any one of those matters was sufficient to revoke his parole. In combination, they strongly indicated he was unsuitable for parole and thus "bound for . . . prison" regardless of the cocaine incident. Under these "compelling" circumstances, defendant would receive an undeserved bounty if time served on the revocation term were also credited against the new criminal sentence.

■ We granted review to determine how section 2900.5 should be applied when a defendant sentenced to a new criminal term seeks credit for presentence custody attributable to a parole revocation caused in part, but

---

[3]A concurrent term is one that begins on the day it is imposed and is not postponed until the completion of a prior term. Thus, a concurrent new term "overlaps" the prior term to the extent service of the earlier sentence is not complete on the day the new term is imposed. "[S]entences may be concurrent, i.e., may run together, without either starting together or ending together. What is meant is that they run together during the time that the periods overlap." (*In re Roberts* (1953) 40 Cal.2d 745, 749 [255 P.2d 782].)

not exclusively, by the conduct that led to the new sentence.[4] We conclude that such credit should be denied.[5]

DISCUSSION

As noted above, section 2900.5, subdivision (b) provides that presentence credits shall be given "only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted." We first had occasion to consider this limiting language in *Rojas, supra,* 23 Cal.3d 152.

In *Rojas,* the petitioner was serving a prison term for manslaughter when he was charged with an unrelated murder committed prior to the manslaughter conviction. He was transferred from prison to county jail pending trial of the murder charge. However, he remained in the constructive custody of the prison warden and continued to earn credit against his manslaughter term. Upon his conviction for second degree murder, he received a prison sentence which was to run concurrently with the remainder of the time he was serving for manslaughter. By petition for habeas corpus, he sought credit against the new murder sentence for the period spent in county jail awaiting resolution of the murder case.

We rejected the claim. We explained that the purpose of section 2900.5 is to ensure that one held in pretrial custody on the basis of unproven criminal

---

[4]The People advise, and defendant does not dispute, that because of continuing parole problems, defendant's current "control date" for release from parole, assuming credits are unavailable, is December 23, 1996. Any presentence credit at issue in this case would move this control date forward. Hence, the matter is not moot.

[5]Though given a specific opportunity to do so, defendant's counsel did not object to the trial court's denial of credits. Indeed, counsel made a remark which, although ambiguous, may have reflected her understanding that the denial was linked to defendant's negotiated plea and lenient sentence. The record thus raises questions whether, by virtue of the plea bargain, or under doctrines such as invited error, waiver, or estoppel, defendant has lost his right to challenge the denial of credits on appeal. (See, e.g., *People* v. *Scott* (1994) 9 Cal.4th 331, 352-354 [36 Cal.Rptr.2d 627, 885 P.2d 1040]; *People* v. *Walker* (1991) 54 Cal.3d 1013, 1024 [1 Cal.Rptr.2d 902, 819 P.2d 861]; *People* v. *Perez* (1979) 23 Cal.3d 545, 549-550, fn. 3 [153 Cal.Rptr. 40, 591 P.2d 63]; *People* v. *Correll* (1991) 229 Cal.App.3d 656, 659 [280 Cal.Rptr. 266]; but cf. *Mary M.* v. *City of Los Angeles* (1991) 54 Cal.3d 202, 211-213 [285 Cal.Rptr. 99, 814 P.2d 1341]; *People* v. *McClellan* (1993) 6 Cal.4th 367, 379 [24 Cal.Rptr.2d 739, 862 P.2d 739].) However, the People did not raise a procedural bar, either in the Court of Appeal or in this court, until we requested supplemental briefing on the issue. Because the question whether defendant has preserved his right to raise this issue on appeal is close and difficult, we assume he has preserved his right, and proceed to the merits. We have done the same in similar situations in the past. (*People* v. *Champion* (1995) 9 Cal.4th 879, 908, fn. 6 [39 Cal.Rptr.2d 547, 891 P.2d 93]; see also, e.g., *People* v. *Fudge* (1994) 7 Cal.4th 1075, 1106-1107 [31 Cal.Rptr.2d 321, 875 P.2d 36]; *People* v. *Pinholster* (1992) 1 Cal.4th 865, 912 [4 Cal.Rptr.2d 765, 824 P.2d 571]; *People* v. *Malone* (1988) 47 Cal.3d 1, 38 [252 Cal.Rptr. 525, 762 P.2d 1249]; *People* v. *McLain* (1988) 46 Cal.3d 97, 110 [249 Cal.Rptr. 630, 757 P.2d 569]; *People* v. *Miranda* (1987) 44 Cal.3d 57, 85 [241 Cal.Rptr. 594, 744 P.2d 1127].)

charges will not serve a longer overall period of confinement upon a subsequent conviction than another person who received an identical sentence but did not suffer preconviction custody. However, we observed, "[t]here is no reason in law or logic to extend the protection intended to be afforded one merely *charged* with a crime to one already incarcerated and serving his sentence for a first offense who is then charged with a *second* crime. As to the latter individual the deprivation of liberty for which he seeks credit cannot be attributed to the second offense. Section 2900.5 does not authorize credit where the pending proceeding has no effect whatever upon a defendant's liberty." (23 Cal.3d at p. 156, italics in original.)

The petitioner in *Rojas* urged he was entitled to credit because his jail custody was attributable *at least in part* to the pending murder charge. He cited *In re Bentley* (1974) 43 Cal.App.3d 988 [118 Cal.Rptr. 452] (*Bentley*), where the Court of Appeal had granted credit against a robbery sentence for two periods of pretrial jail custody during which the prisoner was simultaneously serving a term of incarceration for violation of his parole in another case. The *Bentley* court had justified this outcome by stressing that subdivision (b) of section 2900.5 does not say pretrial custody must be *exclusively* attributable to the charges for which credits are sought. (43 Cal.App.3d at p. 992.)

*Rojas* concluded that although *Bentley*'s result was correct on the particular facts there presented, its reasoning must be disapproved. Though petitioner Bentley's parole status stemmed from an earlier offense, apparently the sole reason for *revocation* of that parole was the *identical robbery* which had also led to his new criminal sentence. Under these narrow circumstances, *Rojas* conceded, "[a] literal interpretation of section 2900.5" would have allowed Bentley his credits (even though duplicative). (*Rojas, supra*, 23 Cal.3d at p. 157.) But this was not because the critical periods of custody were related to both the parole and criminal proceedings, as the *Bentley* court had suggested. Rather, it was because they were attributable to *the same conduct* (i.e., the new robbery). (*Rojas, supra*, 23 Cal.3d at p. 157.)

The court in *Bentley*, said *Rojas*, had "injected a nonexistent ambiguity" into the statute by concluding that credits were due because section 2900.5, subdivision (b) " 'does not say "attributable *exclusively* to charges arising," etc.' " (*Rojas, supra*, 23 Cal.3d at p. 157, quoting *Bentley, supra*, 43 Cal.App.3d at p. 992, italics in *Bentley*.) "Although the word 'exclusively' does not appear, it is clearly provided that credit is to be given 'only where' custody is related to the 'same conduct for which the defendant has been convicted.' The sensible inference is that a defendant is not to be given credit for time spent in custody if during the same period he is already serving a term of incarceration." (*Rojas, supra*, 23 Cal.3d at pp. 155-156.)

*Rojas* also expressly disapproved *In re Pollock* (1978) 80 Cal.App.3d 779 [145 Cal.Rptr. 833] (*Pollock*), which had adopted *Bentley*'s "questionable reasoning" to hold that a defendant must receive credit for jail time awaiting disposition of criminal proceedings even if he is simultaneously serving a prison sentence for another offense. (*Rojas, supra,* 23 Cal.3d at p. 157.) *Rojas* thus sought to negate any implication that credit must invariably be awarded in any and all *proceedings* that had any relationship to a period of custody for which credit is sought.

We next confronted subdivision (b) of section 2900.5 in *Atiles, supra,* 33 Cal.3d 805. While free on parole from an earlier robbery sentence, petitioner Atiles was arrested and charged with new crimes of robbery and sodomy, both counts arising from a single incident. A parole hold was placed on him, and he remained in jail after his arrest. The Board subsequently revoked his parole, citing the robbery and sodomy, as well as violation of a condition against use of alcohol. He was returned to custody for a six-month period, with credit for his jail time prior to revocation.

Atiles completed his parole term on November 3, 1979. Three days later, he made bail and was released to await disposition of the still-pending criminal charges.

The new criminal matter was resolved when Atiles pled guilty to robbery and admitted his prior conviction as a sentence enhancement. The court imposed a four-year total sentence. It granted credit only for the three days of custody between the expiration of his parole term and his release on bail. By petition for habeas corpus, Atiles sought additional credit for his entire parole revocation term (including his prerevocation jail time).

In a four-to-three decision, the *Atiles* court granted the requested relief. The majority first rejected the People's claim that under *Rojas,* one should not receive credit on a new sentence for time served, and already credited, on another sentence (i.e., a parole revocation term). In *Rojas,* the *Atiles* majority observed, the prisoner was *already* incarcerated for an *unrelated* crime when charged, convicted, and sentenced on new charges. This unrelated incarceration, standing alone, would have prevented Rojas's liberty during all periods of custody for which he later sought credit against the second sentence. Hence, such custody (though it took place in county jail awaiting trial on the new charges) was not "attributable" to the "same conduct" which led to Rojas's new term.

Here, by contrast, said the *Atiles* majority, "petitioner was not serving his [earlier] term [for a prior, unrelated robbery] when arrested. He was on

parole. The conduct which led to his arrest and conviction on the new criminal charge also formed a basis for the parole hold and subsequent revocation proceedings. Thus his custody in the county jail was, literally, 'attributable to proceedings related to the same conduct for which the defendant has been convicted' . . . ." (33 Cal.3d at pp. 809-810.)[6]

The People pointed out that Atiles's new criminal sentence was based *solely* on a robbery, while the earlier parole revocation was based on the robbery *plus* other acts of misconduct. Hence, the People reasoned, Atiles was not entitled to have his parole revocation term credited against his criminal sentence, because, contrary to the intent of section 2900.5, subdivision (b), his custody arising from the parole violations was not *exclusively* attributable to the "same conduct" that produced the criminal sentence.

The *Atiles* majority ruled, however, that the statutory phrase "attributable to the same conduct" was not so restricted. The majority conceded that *Rojas* had criticized *Bentley, supra*, 43 Cal.App.3d 988, for observing unnecessarily, given the facts of that case, that section 2900.5, subdivision (b) does not contain the phrase " '*exclusively*' attributable" (italics added). However, said the majority, this portion of *Rojas* was not a holding that the statute *does* contain such a limitation. (*Atiles, supra*, 33 Cal.3d at p. 810.) On the contrary, the majority opined, nothing in the statute expressed a requirement of absolute identity, and no such requirement may be implied. (*Ibid.*)

"In determining whether custody for which credit is sought under section 2900.5 is 'attributable to proceedings leading to the conviction,' " the *Atiles* majority therefore held, "the sentencing court *is not required to eliminate all other possible bases* for the defendant's presentence incarceration. The court need only determine that the defendant was not *already serving* a term for an unrelated offense when restraints related to the new charge were imposed on him, and the conduct related to the new charge is *a basis* for those restraints. [Fn. omitted.]" (*Atiles, supra*, 33 Cal.3d at p. 810, italics added.) Thus, " 'custody . . . attributable to proceedings related to the same conduct for which the defendant has been convicted' [includes] time in presentence custody during which a restraint or restraints related to that conduct made it

---

[6]Thus, the *Atiles* majority stressed that *Rojas* had disapproved only the reasoning, but not the result, of *Bentley, supra*, 43 Cal.App.3d 988, where the petitioner, who was free on parole when arrested on new charges, received duplicative credits against a parole revocation term and a new criminal sentence which both stemmed from the same new misconduct. Thereafter, the *Atiles* majority noted, several Court of Appeal decisions had similarly concluded that *Rojas* did not preclude duplicative credits in the *Bentley* situation. (*Atiles, supra*, 33 Cal.3d at p. 809, citing *In re Anderson* (1982) 136 Cal.App.3d 472 [186 Cal.Rptr. 269]; *People* v. *Simpson* (1981) 120 Cal.App.3d 772 [174 Cal.Rptr. 790]; and *People* v. *Penner* (1980) 111 Cal.App.3d 168 [168 Cal.Rptr. 431].)

impossible for the defendant to obtain his freedom, regardless of whether the defendant was also subject to other restraints on his liberty." (*Id.* at p. 811.)

This conclusion, said the *Atiles* majority, was supported not only by the statute's "literal language," and by the maxim that any ambiguity favors the criminal defendant, but also by other indicia of legislative intent. For example, the majority observed, a post-*Bentley* amendment to section 2900.5, subdivision (b) provides that "[c]redit shall be given only once for a single period of custody attributable to multiple offenses for which a *consecutive* sentence is imposed." (Stats. 1978, ch. 304, § 1, p. 632, italics added.) The "limited focus" of this amendment, the majority concluded, implied that in all other cases, the Legislature intended to permit duplicative credits for a single period of custody attributable to multiple offenses. (*Atiles, supra,* 33 Cal.3d at p. 812.)

Moreover, said the *Atiles* majority, this construction was consistent with the broad legislative purpose to "[equalize] the actual time served in custody for given offenses. [Citation.]" (33 Cal.3d at p. 812.) Sentence inequality may arise, the majority explained, when the prisoner was arrested and held for multiple acts of misconduct that later result in terms intended by the sentencer to be served concurrently.

The majority reasoned as follows: If all such terms are imposed in a single proceeding, such that they all begin together, any presentence custody related to all will apply as a credit against all. But if identical sentences for the same conduct are imposed in separate proceedings—as, for example, when multiple charges are severed and tried separately, or result in both a parole revocation term and a "concurrent" criminal sentence—maximum concurrency is defeated, and the overall period of confinement lengthened, unless each term is credited with time served on the others, and with all presentence custody which was jointly attributable to the multiple offenses. (33 Cal.3d at pp. 812-813.)

Justice Mosk's dissent, joined by Chief Justice Bird and Justice Richardson, expressed "doubt that the Legislature intended to bestow a special benefit on recidivists." (*Atiles, supra,* 33 Cal.3d 805, 814 (dis. opn. of Mosk, J.).) Quoting the Court of Appeal, the dissent noted that " '[t]o allow credit on the current term for the incarceration for parole violation on a former offense would not only afford petitioner double credit but would negate the

imposition of any sentence for parole violation and render such provisions meaningless.' " (*Ibid.*)[7]

*Joyner, supra,* 48 Cal.3d 487 is our most recent attempt to address the "multiple restraint" problem presented by section 2900.5's "same conduct" rule. In March 1983, petitioner Joyner, a Florida probationer, was arrested in Florida for new crimes committed in that state. While he was being held there for further proceedings, California placed a hold on him for unrelated crimes committed here.

In July 1983, he pled guilty in a single Florida proceeding to criminal charges arising from the new Florida offenses. He received concurrent sentences with credit for all days of presentence custody. In September 1983, the same new crimes led to revocation of his Florida probation for an earlier crime. He was sentenced to prison for that offense, the sentence to run concurrently with those imposed in July. Apparently he received credit against this sentence for all time in custody since his March 1983 arrest.

Once Florida proceedings were completed, Joyner was extradited to face charges in California. While in custody here, he continued to serve his Florida sentences. He pled guilty to the California crimes, and in December 1983, he was sentenced to a prison term concurrent with the Florida sentences. The trial court denied all presentence credits.

On habeas corpus, Joyner sought credit against the California sentence for all Florida and California custody from the time of his Florida arrest until the imposition of the California sentence. He asserted that during this entire period, his custody was "attributable," at least in part, to the California hold, which would presumably have prevented his liberty notwithstanding the Florida matters.

We denied the claim, using reasoning that was impliedly, and sometimes expressly, contrary to several of the *Atiles* majority's assumptions. We first confirmed *Rojas*'s holding that section 2900.5 does not allow a prisoner dual credit against a new criminal sentence for periods during which he was serving time for another, unrelated crime, even if the new matter was simultaneously pending. We reemphasized *Rojas*'s disapproval of contrary reasoning in *Bentley, supra,* 43 Cal.App.3d 988 and *Pollock, supra,* 80 Cal.App.3d 779, which reasoning was founded upon mistaken assumptions

---

[7]Responding to such criticism, the *Atiles* majority noted that even if a parole term must be fully credited against a subsequent criminal sentence arising from the same conduct, the consequences of recidivism are not thereby obviated. The majority pointed out that the offense which led to parole status may still be used to impose an enhanced sentence for new crimes. (33 Cal.3d at p. 813.)

about the absence of the phrase *"exclusively* attributable" from section 2900.5, subdivision (b).

Once petitioner Joyner began serving his Florida sentence, we reasoned, his situation was indistinguishable from that of the petitioner in *Rojas*; from that time on, his custody "was as a practical matter unavoidable" because of the Florida case alone, and "therefore could not be attributable to the California proceedings from which the hold originated. [Citation.]" (*Joyner, supra*, 48 Cal.3d at p. 492.) By the same token, because he had received full credit against his Florida sentence for his pretrial custody, that pretrial period also was one "during which [he] in effect was serving a sentence on another conviction." (*Ibid.*) Moreover, he had failed to show he could have been free while awaiting his Florida sentences but for the California hold. In short, we concluded, the current record did not establish "that the California hold . . . had any effect upon petitioner's liberty at any time. Thus petitioner has failed to demonstrate that his presentence custody was, within the meaning of section 2900.5, 'attributable to' anything other than the Florida proceedings." (48 Cal.3d at p. 492.)

*Joyner* noted that "the federal courts and a number of other state courts, when presented with the factual pattern of this case, employ a 'strict causation' analysis consistent with this court's decision in *Rojas* . . . ." (*Joyner, supra*, 48 Cal.3d at p. 493.) Thus, federal courts had interpreted a statute similar to section 2900.5 to mean " 'that the credit against the federal sentence attaches only when the federal detainer is the *exclusive* reason for the prisoner's failure to obtain his release on bail.' " (48 Cal.3d at p. 493, quoting *United States* v. *Blankenship* (6th Cir. 1984) 733 F.2d 433, 434, italics in *Blankenship*.) And "[s]everal state courts [had] used the same 'strict causation' analysis to deny credits for out-of-state or federal incarceration. [Citations.]" (48 Cal.3d at p. 493.)

Petitioner Joyner insisted, however, that under *Atiles, supra*, presentence custody must be credited against any and all sentences for any conduct which was "a" basis, even if not the only basis, for the presentence confinement. Despite the Florida proceedings and sentences, he asserted, his California crimes were at least partly responsible for all his confinement prior to California sentencing, because he remained subject to the California hold throughout this period.

In responding to this argument, the *Joyner* court distinguished and criticized *Atiles* on grounds highly relevant to the issue before us. First, *Joyner* observed, *Atiles* was a case where the separately imposed terms of incarceration had each stemmed from the "same conduct." Hence, *Atiles* was not

controlling where the custody for which credit was sought stemmed from "unrelated" criminal conduct. (*Joyner, supra,* 48 Cal.3d at p. 493.)[8]

More fundamentally, *Joyner* attacked as unsupported "dicta" *Atiles*'s discussion of the broad purposes of section 2900.5. *Atiles*'s statutory analysis, said *Joyner*, was "logically inconsistent with *Rojas, supra,* . . . and . . . unsupported by the language or legislative history" of the presentence credit law. (*Joyner, supra,* 48 Cal.3d at pp. 493-494.)

In particular, *Joyner* explained, *Atiles* had "[gone] astray" in concluding that section 2900.5 was intended to maximize the concurrency of sentences imposed in multiple proceedings. On the contrary, *Joyner* reasoned, the statutory purposes, as established by earlier case law, were simply to equalize the total period of confinement for persons convicted of the same offense and to eliminate inequalities stemming solely from differences in pretrial custody attributable to that offense. "Both of these purposes," we stressed, "are concerned with equalizing the treatment of different individuals each convicted in a *single proceeding* of the same offense or offenses." (*Joyner, supra,* 48 Cal.3d at p. 494, italics added.)

*Joyner* thus declared: "To the extent that *Atiles* has been read as suggesting that section 2900.5 should be applied invariably to maximize the concurrency of terms imposed at different times, we disavow the suggestion. There is no persuasive indication that section 2900.5 was intended to achieve the goal of making the net time served on separately imposed concurrent terms equal to the net time served on concurrent terms imposed at one time in a single proceeding." (*Joyner, supra,* 48 Cal.3d at p. 494.) Indeed, *Joyner* observed, if that were the statutory goal, the petitioner in *Rojas* should have received credit for time served on his manslaughter term against a later, but "concurrent," murder sentence. (48 Cal.3d at pp. 494-495.)

*Joyner* stopped short of overruling *Atiles* expressly. This case presents facts similar to *Atiles,* and *Joyner*'s facts are distinguishable insofar as they involved proceedings in *separate jurisdictions,* each based on conduct *wholly distinct* from that at issue in the other. Yet every published Court of Appeal

---

[8]When the facts of *Atiles* are examined, they reveal a latent ambiguity in this passage of *Joyner* that is significant to the issue we confront. In *Atiles,* it will be recalled, the petitioner sought credit against a robbery sentence for time served on an earlier parole revocation term. That revocation was based *in part* upon the same robbery, but was also founded on (1) a companion sodomy (initially charged in the criminal matter, but apparently bargained out of the case), and (2) a third, unrelated parole violation. It is not clear whether in characterizing *Atiles* as a "same conduct" case, the *Joyner* court assumed the robbery was the sole ground for both proceedings, or whether it understood that the robbery was merely "a" common basis for the two matters. In *Joyner* itself, there was, of course, no common basis for the Florida and California proceedings.

decision to consider the *Atiles* scenario since *Joyner* was decided has concluded that *Joyner*'s "strict causation" test applies to an *Atiles* case.

These post-*Joyner* decisions apply a general rule that a prisoner is not entitled to credit for presentence confinement unless he shows that the conduct which led to his conviction was the sole reason for his loss of liberty during the presentence period. Thus, these cases reason, his criminal sentence may not be credited with jail or prison time attributable to a parole or probation revocation that was based *only in part* upon the same criminal episode. (*People* v. *Wiley* (1994) 25 Cal.App.4th 159, 165-166 [30 Cal.Rptr.2d 701]; *People* v. *Purvis* (1992) 11 Cal.App.4th 1193, 1196-1198 [14 Cal.Rptr.2d 651]; *In re Bustos, supra,* 4 Cal.App.4th 851, 855; *In re Nickles* (1991) 231 Cal.App.3d 415, 423-424 [282 Cal.Rptr. 411].) For reasons that will appear, we conclude that these authorities construe the statute correctly.

Defendant suggests that *Rojas, Atiles,* and *Joyner* can be reconciled, and that each continues to operate in its own sphere. Thus, he urges, *Rojas* and *Joyner* apply only when the presentence custody for which the prisoner seeks credit was caused, at least in part, by "proceedings" wholly unrelated to the conduct which led to his current sentence. By contrast, he insists, *Atiles* still governs situations where conduct leading to the current sentence *was* involved, whether to a greater or lesser degree, in each of the "proceedings" which contributed to the presentence restraint.

Such a result might be reached under a strained and hypertechnical reading of section 2900.5, which literally allows credit when the presentence restraint was "attributable to *proceedings related* to the same conduct for which the defendant has been convicted." (Subd. (b), italics added.) However, we believe that the reasoning *Joyner* applied to its own facts is equally applicable to the facts of *Atiles* and the instant case.

Our reasons are straightforward. By focusing, as defendant suggests, on "proceedings" rather than "conduct," we would obscure the limited legislative purpose of section 2900.5, as explained in *Joyner*. *Joyner* concluded, contrary to *Atiles*, that the statute is intended only to prevent inequalities in total confinement among defendants, each similarly sentenced in a *single proceeding*, which inequalities arise solely because one defendant suffered presentence confinement while another did not. Section 2900.5 is not intended to bestow the windfall of duplicative credits against all terms or sentences that are separately imposed in multiple proceedings. And this is so

even where, while serving other sentences, the defendant was also incidentally subject to restraint based on "proceedings related to the same conduct" for which he now seeks sentence credit.[9]

When multiple, unrelated acts of misconduct all contributed to a period of presentence restraint, and are later resolved in multiple proceedings, it should generally make no difference how the conduct is distributed among the proceedings. The mere happenstance that separate proceedings addressing unrelated conduct also concern one or more common acts should not trigger full duplicate credit against all resulting terms. That would produce the dual-credit windfall that *Joyner* and *Rojas* deemed unintended by section 2900.5. The rule of "strict causation" developed in those cases stems from the conclusion that section 2900.5 did not intend to allow credit for a period of presentence restraint unless the *conduct* leading to the sentence was the *true and only unavoidable basis* for the earlier custody.

Moreover, as *Rojas* and *Joyner* made clear, section 2900.5 is intended to provide equitable treatment for one held in *pretrial* custody on mere *charges* of crime, not to give credit for time already being served and credited on another term or sentence for unrelated violations. In this case, once defendant began serving a parole revocation term founded upon multiple, unrelated acts of misconduct, his custody was unavoidable on that basis regardless of the fact that he was simultaneously awaiting trial on the single criminal charge. (Cf. *Joyner, supra,* 48 Cal.3d at p. 492.) Of course, defendant also received credit on his revocation term for the prerevocation custody which immediately followed his arrest. He has not demonstrated that the pending criminal charge alone would have prevented his release during that period. When we apply the logic of *Rojas* and *Joyner,* defendant "has failed to demonstrate that his presentence custody was, within the meaning of section 2900.5, 'attributable to' anything other than" the unrelated acts which were also at issue in the revocation matter. (*Ibid.*)

The contrary implications of *Atiles* would provide exactly the reward for recidivists that aroused Justice Mosk's concern in that case. One conditionally free on parole or probation after his conviction for a prior crime carries

---

[9]When the statute is viewed in this context, *Atiles*'s partial reliance on a 1978 statutory amendment also seems misplaced. The amendment added a second sentence to section 2900.5, subdivision (b), providing that "[c]redit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed." (Stats. 1978, ch. 304, § 1, p. 632.) The *Atiles* majority implied that the Legislature thus conceded dual credits might be available against multiple *concurrent* sentences. (33 Cal.3d at pp. 811-812.) However, there is no indication the 1978 amendment was concerned with concurrent sentences for unrelated conduct imposed in *multiple proceedings.* By its terms, the amendment does no more than clarify that when consecutive terms are imposed for multiple offenses in a single proceeding, only one of the terms shall receive credit for presentence custody, while leaving undisturbed the accepted principle that when *concurrent* sentences are imposed at the same time, presentence custody is credited against all.

a disability not applicable to other persons. If he commits any new offense, he is obviously subject to a new criminal conviction and sentence. But his new violation of law may independently be grounds for his incarceration based on the revocation of his existing parole or probation.

It is common that the same new offense committed while on parole or probation will figure in separate criminal and revocation proceedings, and this is entirely appropriate. Not only has the parolee or probationer broken the law anew, but he has betrayed the conditional trust placed in him and demonstrated, even before a prior brush with the law is complete, that he has not been deterred.

It is often also true that a parolee or probationer would have been remanded to custody for reasons entirely unrelated to the new offense, even though the new crime also constitutes "a" basis for such restraint. The facts of this case illustrate the point. When arrested by parole agents, defendant had already committed a flurry of violations for which his parole had been suspended. These violations alone amply demonstrated his unsuitability for parole and made a revocation term probable entirely apart from the last-minute cocaine charge which later led to his criminal conviction.

We find Justice Mosk's *Atiles* concerns persuasive. In our view, neither the words nor the history of section 2900.5 implies that separately imposed criminal and revocation terms based on unrelated conduct should collapse into one simultaneous term whenever it happens that there was some common factual basis for both proceedings. We decline to construe the statute in that fashion.

Defendant suggests that the "strict causation" rule of *Rojas* and *Joyner* is unfair, because it requires a prisoner seeking credit for a multiple-cause presentence restraint to "prove a negative"—i.e., that the restraint would not have occurred but for the current crimes alone. In parole and probation cases involving multiple violations, he asserts, the record will rarely disclose which misdeeds were the dispositive causes of revocation.

We acknowledge the difficulty, but it arises from the limited purposes of the credit statute itself. The alternative is to allow endless duplicative credit against separately imposed terms of incarceration when it is not at all clear that the misconduct underlying these terms was related. As we have seen, such credit windfalls are not within the contemplation of section 2900.5.[10]

In sum, we hold, consistent with *Rojas* and *Joyner*, that where a period of presentence custody stems from multiple, unrelated incidents of misconduct,

---

[10]We note that defendant's burden, while onerous, is not necessarily impossible. For example, in *People* v. *Williams* (1992) 10 Cal.App.4th 827 [13 Cal.Rptr.2d 107], the defend-

such custody may not be credited against a subsequent formal term of incarceration if the prisoner has not shown that the conduct which underlies the term to be credited was also a "but for" cause of the earlier restraint. Accordingly, when one seeks credit upon a criminal sentence for presentence time already served and credited on a parole or probation revocation term, he cannot prevail simply by demonstrating that the misconduct which led to his conviction and sentence was "a" basis for the revocation matter as well. To the extent *Atiles* reaches a contrary conclusion, we overrule that decision.[11]

What we said in *Joyner* bears repeating: "We acknowledge that determining entitlement to presentence credits for concurrent terms imposed in multiple proceedings raises a number of troubling questions. We do not expect that this decision will resolve them all and we recognize that any rule

---

ant was arrested for kidnapping and sexually assaulting a minor. His probation in an earlier matter was revoked on two grounds, failure to "obey all laws" and "new charges." He was also charged with multiple sex offenses in the new case, but he subsequently entered a negotiated plea to one count only. The Court of Appeal concluded he was entitled to credit against his sentence for time spent in custody on the probation revocation because this custody arose from the identical conduct that led to the criminal sentence. First, the court reasoned, the record of the probation revocation disclosed no basis for a conclusion that the "obey all laws" violation related to anything except the kidnapping-assault case. Second, the court concluded, the mere dismissal of certain counts in the criminal proceeding, all of which counts stemmed from the same criminal episode, did not mean that the revocation was based on conduct different from that leading to the criminal sentence. (*Id.*, at pp. 832-834.)

[11]What little pertinent out-of-state authority we have found appears generally to support the conclusion we have reached. For example, other states with similar presentence credit statutes have applied *Joyner*-like rules of "strict causation" when presentence custody arose jointly from unrelated crimes in different counties. (E.g., *State* v. *Calderon* (1983) 233 Kan. 87 [661 P.2d 781, 789-790]; *State* v. *Hale* (1989) 116 Idaho 763 [779 P.2d 438, 440].) And, like *Rojas* and *Joyner*, they have concluded that once a defendant begins serving an actual term or sentence, he is not entitled to credit that custody time against a still-pending sentence for unrelated crimes. (E.g., *Commonwealth* v. *Foley* (1983) 15 Mass.App. 965 [446 N.E.2d 737, 738].) Two jurisdictions have denied credit on a criminal sentence for time spent in custody on a previously imposed parole or probation term, even where the revocation term was based *exclusively* on the same conduct that led to the criminal sentence. (*State* v. *Eugene* (N.D. 1983) 340 N.W.2d 18, 35-36; *State* v. *San Miguel* (1982) 132 Ariz. 57 [643 P.2d 1027, 1030-1031].)

Outside California, Colorado has the most published decisions on statutory presentence credit issues. In *Schubert* v. *People* (Colo. 1985) 698 P.2d 788, the Colorado Supreme Court established a liberal-seeming "substantial nexus" test, which appeared to entitle a defendant to credit on any and all concurrent terms arising from conduct that contributed to his presentence custody. (*Id.*, at pp. 794-796.) But in a companion case, *Torand* v. *People* (Colo. 1985) 698 P.2d 797, the court made clear that once the defendant begins serving a criminal or revocation term on one charge, he is not entitled to credit such incarceration against a second, unrelated case in which sentence is still pending. (*Id.*, at pp. 800-801.) And two years later, in *Massey* v. *People* (Colo. 1987) 736 P.2d 19, the court held that the "substantial nexus" test did not permit duplicative credit on unrelated concurrent sentences separately imposed in different counties. The *Massey* court explained that *Schubert* was concerned with concurrent sentences imposed *by the same court* and intended to be functionally the same, such that a denial of duplicative credits would defeat the sentencer's intent. (*Massey, supra*, 736 P.2d at pp. 22-23.)

or combination of rules is likely to produce some incongruous results and arguable unfairness when compared to a theoretical state of perfect and equal justice. Recognizing there is no simple or universal formula to solve all presentence credit issues, our aim is to provide for section 2900.5 a construction which is faithful to its language, which produces fair and reasonable results in a majority of cases, and which can be readily understood and applied by trial courts." (48 Cal.3d at p. 495.) We are satisfied that the narrow holding of this case achieves those cautious goals.

## CONCLUSION

Because defendant has not shown that he could have been free during any period of his presentence custody but for the same conduct that led to the instant conviction and sentence, he is not entitled to credit on that sentence for the period of presentence restraint. The Court of Appeal erred in concluding otherwise. Its judgment is therefore reversed.

Lucas, C. J., Mosk, J., Kennard, J., Arabian, J., George, J., and Werdegar, J., concurred.