Filed: 3/12/14  P. v. Castro CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039283 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS121558A) |
| v. | |
| LEO ANTHONY CASTRO, | |
| Defendant and Appellant. | |

## I. INTRODUCTION

Pursuant to a plea agreement, defendant Leo Castro was placed on felony probation after admitting that he took property from another person. On appeal he questions for the first time the knowledge elements in six probation conditions restricting association and possession. He also argues that he was not given enough credit for presentence custody time. For the reasons stated below, we will affirm the judgment after ordering three probation conditions modified.

## II. TRIAL COURT PROCEEDINGS

### A. THE OFFENSE

On August 14, 2012, defendant trained an Air Soft pistol on a man and took money and credit cards from the man's wallet after defendant's wife had lured the man from a gas station into their hotel room in Salinas with a promise of sex. Their motivation was partly to pay for another night in the hotel for their homeless family.

The victim called the police from a convenience store across from the hotel. He reported that while he was pumping gas at a gas station, a woman waved at him from the door of a nearby third-floor hotel room. He ignored her and was flagged down by defendant as he was driving through the hotel parking lot. When he stopped to see what defendant wanted, defendant drew a firearm from a bag, racked the slide, and demanded money. The victim said that while he was calling the police, he saw defendant walk into the hotel room and contact the woman and three children.

The police went to the hotel room and located two male juveniles, who said their parents had left to buy fast food. Investigation revealed that defendant's wife had rented the room on August 8, 2012. The police were familiar with defendant and his wife.

The police saw defendant's car pass by the hotel and they pursued and stopped it. Inside the car were defendant, his wife, and a boy. The victim's credit cards were in defendant's pocket, except for one card that was near the driver's seat. The victim identified defendant and his wife and the Air Soft pistol at the scene of the stop. A methamphetamine pipe was found in the driver's side door. There was no child safety seat in the car. As the three children retrieved personal items from the hotel room, the police located another methamphetamine pipe in the room and additional identification that did not belong to defendant or his wife.

Defendant and his wife were taken into custody. At the police department, the wife first characterized the victim's money as a loan from a man with whom she had sex before, but not for money. When the police doubted her honesty, she admitted their plan was that defendant would rob whomever she lured into their room. Their children were in the stairwell, not in the room, while the offense was committed. She took the money immediately to pay the room rent. They tried to use the credit cards at fast food restaurants and a gas station but were unable to do so. Defendant's wife admitted that they had obtained money this way before and that she and defendant both used

2

methamphetamine.  In a police interview, defendant ultimately corroborated his wife's latest version of the offense.

### B. PLEA AND SENTENCING

A complaint filed August 15, 2012, charged defendant and his wife with second degree robbery from "Victim #1" (count 1; Pen. Code, § 211)[1], three counts of felony child endangerment (counts 2-4; § 273a, subd. (a)), and the misdemeanor of possessing drug paraphernalia (count 5; Health & Saf. Code, § 11364.1, subd. (a)).  Defendant was also charged with misdemeanor driving with a suspended license (count 6; Veh. Code, § 14601.1, subd. (a)).

On September 5, 2012, defendant waived a preliminary examination and the parties stipulated that the complaint would serve as the information.

On November 14, 2012, the prosecutor asked to amend the complaint to allege grand theft from a person (count 7; § 487, subd. (c)) with the understanding that defendant would plead guilty to that charge and be placed on felony probation. Defendant initialed and signed a written waiver of rights form.  Defense counsel stipulated there was a factual basis for the plea in the police report, and the waiver form itself recited that defendant had taken property from another person.  Defendant acknowledged that his guilty plea was also an admission to violating misdemeanor probation from June 2012.

At a hearing on December 14, 2012, defendant was released on his own recognizance and sentencing was continued until January 25, 2013.

A probation report filed on January 24, 2013, stated that defendant had been placed on a year of misdemeanor probation on June 28, 2012 for petty theft.[2]  Sentencing

---

[1] Unspecified section references are to the Penal Code.

[2] There is a conflict in the record about the status of the misdemeanor case, as we will discuss.

3

for the probation violation was scheduled for January 25, 2013. The probation department calculated custody credits from August 14 to December 14, 2012, as 123 actual days plus 122 days conduct credit for a total of 245 days. The report included recommended dispositions of both cases. In the felony case, the report recommended suspending imposition of sentence for three years and placing defendant on formal probation subject to 21 conditions, plus the imposition of various fines, fees, costs, and assessments. Among the conditions was 180 days in jail with no credit for time served. The report also recommended "that probation be revoked, reinstated, and modified" in the misdemeanor case on the condition that defendant serve 305 days in jail consecutive to the other case with credit for 245 days served.

At the sentencing hearing on January 25, 2013, defense counsel requested concurrent sentences and also pointed out that the recommendation called for serving "245 days on a 180 day misdemeanor." The court acknowledged that was a problem and the probation officer offered a new recommendation of terminating the misdemeanor probation with credit for 180 days in jail (90 days actual custody and 90 days conduct credit), with the remaining 33 days of actual custody applied to the current felony charge.

At the hearing, the trial court described the felony case as serious based on the impact of the couple's conduct on their children. The court suspended imposition of sentence for three years and imposed most of the 21 conditions recommended in the probation report. The court imposed 365 days jail with credit for 65 days (33 actual days plus 32 days conduct credit) on the current charge. The court "revoked and terminated" probation in the misdemeanor case with credit for 180 days served; however, when the

4

courtroom clerk mentioned it was an "open case," the court stated, "So, he's to be sentenced on it? Probation is denied. Serve 180 days, credit 180 days."[3]

Defendant's wife's counsel questioned proposed condition 18 in the probation report – "Not associate with any individuals you know, have reason to know, or are told by the Probation Officer to be on any form of probation or parole supervision" – pointing out that defendant and his wife were living together and trying to get their children back. The court ordered condition 18 modified to include " 'without the prior approval' [of the probation officer]." Defendant and his wife accepted the terms and conditions of probation without further questions.

On February 2, 2013, the trial judge signed a minute order reflecting the probation conditions imposed on January 25, 2013. Among those conditions are the following.[4]

"9. Not use or possess alcohol, intoxicants, narcotics, or other controlled substances without the prescription of a physician; not traffic in, or associate with persons you know, or have reason to know, to use or traffic in, narcotics or other controlled substances. [¶] . . . [¶]

"12. Not possess, receive or transport any firearm, ammunition or any deadly or dangerous weapon. . . . [¶] . . . [¶]

"14. Stay away at least 100 yards from the victim, the victim's residence or place of employment, and any vehicle the victim owns or operates.

"15. Do not possess tools used for the express purpose of facilitating a burglary or theft; such as, pry bars, screwdrivers, pick lock devices, universal keys or implements, or

---

[3] By denying probation, the court treated an "open" case as one awaiting either imposition of sentence or grant of probation, in contrast to probation having already been granted as asserted in the probation report. It does not affect our analysis whether the 180 day sentence imposed in the misdemeanor case followed an initial grant and termination of probation.

[4] In this case, we will review the conditions as stated in the signed minute order.

other such devices without the express permission of your supervising Probation Officer. [¶] . . .[¶]

"18. Not associate with any individuals you know, have reason to know, or are told by the Probation Officer to be on any form of probation or parole supervision without prior approval of probation officer."

## III. ANALYSIS

### A. SCOPE OF REVIEW

A reviewing court may examine the constitutionality of a probation condition, even if not challenged in the trial court, if the question can be resolved as a matter of law without reference to the sentencing record. (*In re Sheena K.* (2007) 40 Cal.4th 875, 888-889 (*Sheena K.*).)

### B. ASSOCIATION CONDITIONS

Defendant challenges three probation conditions that restrict his associating with other people. Part of condition 9 states, "not traffic in, or associate with persons you know, or have reason to know, to use or traffic in, narcotics or other controlled substances." Condition 14 states, "Stay away at least 100 yards from the victim, the victim's residence or place of employment, and any vehicle the victim owns or operates." Condition 18 states, "Not associate with any individuals you know, have reason to know, or are told by the Probation Officer to be on any form of probation or parole supervision without prior approval of probation officer."

Defendant contends that the constructive knowledge aspect of conditions 9 and 18 ("have reason to know") is unconstitutionally vague as this court indicated in *People v. Gabriel* (2010) 189 Cal.App.4th 1070 (*Gabriel*) and that actual knowledge is constitutionally required. The Attorney General asserts that "have reason to know" is not vague.

This court has recently concluded in two published opinions that constructive knowledge elements are constitutionally clear in probation conditions prohibiting

6

association with persons of a specified status (drug users, probationers, parolees, gang members). (*People v Mendez* (2013) 221 Cal.App.4th 1167, review den.; *People v. Rodriguez* (2013) 222 Cal.App.4th 578, pet. for review pending.) Those decisions explained that, in adding an express scienter element to a condition restricting association, *Sheena K.* did not consider whether actual or constructive knowledge was required. Further, constructive knowledge elements have been added to eliminate vagueness in probation conditions by other courts in *People v. Turner* (2007) 155 Cal.App.4th 1432, 1436, and *People v. Moses* (2011) 199 Cal.App.4th 374, 381-382, and constructive knowledge elements in penal statutes have been upheld as not vague in *People v. Mathews* (1994) 25 Cal.App.4th 89, 98, and *In re Jorge M.* (2000) 23 Cal.4th 866, 886. We need not restate those explanations at length here. We adhere to our reasoning and conclude that the express constructive knowledge element of probation conditions 9 and 18 restricting association is constitutionally clear.

Unlike conditions 9 and 18, there is no express scienter in the condition requiring defendant to stay at least 100 yards from "the victim, the victim's residence or place of employment, and any vehicle the victim owns or operates." The condition itself does not name the victim, list addresses, or describe vehicles, and it does not require defendant's probation officer to provide that information, which is not included in the complaint or the probation report. From the nature of the crime, it is possible that defendant saw the victim operating a vehicle, but there is no indication in the record that defendant knows where the victim lives or works. The Attorney General does not object to the addition of a knowledge element to probation condition 14. In the interest of judicial economy, we will order the condition modified to include a knowledge element, rather than remanding for the trial court to fashion an appropriate modification.

## C. POSSESSION CONDITIONS

Defendant challenges three conditions that restrict his possession of certain items. Part of condition 9 states, "Not use or possess alcohol, intoxicants, narcotics, or other

7

controlled substances without the prescription of a physician . . . ." Part of condition 12 states, "Not possess, receive or transport any firearm, ammunition or any deadly or dangerous weapon. . . ." Condition 15 states, "Do not possess tools used for the express purpose of facilitating a burglary or theft; such as, pry bars, screwdrivers, pick lock devices, universal keys or implements, or other such devices without the express permission of your supervising Probation Officer."

This court has previously determined that probation conditions like 12 must be construed as having the same implicit scienter requirements as the statutes they are intended to implement. Such a condition implements various provisions of the Deadly Weapons Recodification Act of 2010 (§§ 16000 et seq.), which defines "firearm," "ammunition," and "deadly weapon" and includes the Dangerous Weapons Control Law, which prohibits weapon and ammunition possession by a convicted felon (specifically sections 29800 and 30305, respectively). Due process does not require making the scienter requirement explicit when it is reasonably implicit. (*People v. Kim* (2011) 193 Cal.App.4th 836, 843, 847 (*Kim*).) Although the term "knowingly" may not be necessary, its inclusion ensures defendant will not be penalized if he unknowingly possesses a prohibited item. But even when "knowingly" is not expressly included, a defendant cannot be found in violation of the weapons condition if he does not know he is in possession of a prohibited item. (*People v. Moore* (2012) 211 Cal.App.4th 1179, 1186 ["a trial court may not revoke probation unless the defendant willfully violated the terms and conditions of probation"].)

For the same reasons it follows that a probation condition like 9 has the same implicit scienter element as the provisions of the Controlled Substances Act (Health & Saf. Code, §§ 11000, et seq.) that the condition is intended to implement. Narcotics are a type of controlled substances. (Health & Saf. Code, §§ 11019, 11032.) However, probation condition 9 is not limited to prohibiting the use or possession of controlled substances. It also prohibits the use or possession of alcohol, which is not a controlled

substance (*People v. Orozco* (2012) 209 Cal.App.4th 726, 733), and "intoxicants," which does not have a clear statutory foundation or meaning. Since the condition includes this word of uncertain reference, it must be clarified either by adding an express knowledge requirement, striking the word "intoxicants," or defining the term. Here also for judicial economy, we will order the condition modified.

Defendant also contends an express knowledge requirement should be added to the language of condition 15, "Do not possess tools used for the express purpose of facilitating a burglary or theft; such as, pry bars, screwdrivers, pick lock devices, universal keys or implements, or other such devices without the express permission of your supervising Probation Officer."

This condition appears to derive from part of section 466, a lengthy statute that makes three kinds of conduct a misdemeanor. It prohibits (a) possessing a burglary tool with the intent to burglarize, (b) knowingly creating such a tool without a property owner's authorization, and (c) creating such a tool with the knowledge or at least a reason to believe it will be used in a crime.[5] In construing related section 466.5, which prohibits use of a motor vehicle master key, *People v. Valenzuela* (2001) 92 Cal.App.4th 768 concluded that since the statute already has an explicit specific intent element, it need not

---

[5] Section 466 makes it a misdemeanor to have "upon him or her in his or her possession a picklock, crow, keybit, crowbar, screwdriver, vise grip pliers, water-pump pliers, slidehammer, slim jim, tension bar, lock pick gun, tubular lock pick, bump key, floor-safe door puller, master key, ceramic or porcelain spark plug chips or pieces, or other instrument or tool with intent feloniously to break or enter into any building, railroad car, aircraft, or vessel, trailer coach, or vehicle as defined in the Vehicle Code, or who shall knowingly make or alter, or shall attempt to make or alter, any key or other instrument named above so that the same will fit or open the lock of a building, railroad car, aircraft, vessel, trailer coach, or vehicle as defined in the Vehicle Code, without being requested to do so by some person having the right to open the same, or who shall make, alter, or repair any instrument or thing, knowing or having reason to believe that it is intended to be used in committing a misdemeanor or felony . . . ."

9

be construed like the weapon possession statutes as also requiring constructive knowledge of the nature of the item. (*Id.* at pp. 778-779.) The court said of section 466, "the elements of the crime described in that section are possession and intent. There is no requirement that the defendant know that the screwdriver is a screwdriver, or the master key is a master key, or even that a particular tool is a slim jim. In other words, the possession of each of the items is lawful until it is intended to be used feloniously." (*Valenzuela, supra*, at p. 777; *People v. Southard* (2007) 152 Cal.App.4th 1079, 1084-1085 [elements of § 466 include possession of tools with the intent to use to use them for breaking and entering].)

We attribute to probation conditions the mental elements implicit in similarly worded penal statutes. (Cf. *Kim, supra*, 193 Cal.App.4th 836, 843, 846.) However, when a condition is written with the apparent intent of omitting an express mental element from an otherwise similarly worded statute, we are precluded from finding that element implicit in the condition. The condition here has omitted all of the mental elements, specific intent, actual or constructive knowledge, specified in section 466. Condition 15 may be made constitutionally clear either by including a specific intent element (e.g., "do not possess a specified tool with the intent to commit a burglary") or by prohibiting possession only if accompanied by scienter (e.g., "do not possess a tool that you know or reasonably should know is used to facilitate a burglary"). The Attorney General does not object to including an express knowledge requirement in condition 15, and in the interest of judicial economy, we will order the condition modified.

### D. CUSTODY CREDITS

To address convictions of a felony and a misdemeanor, a sentencing court's options range from imposing a jail term for the misdemeanor consecutive to a prison term for the felony (e.g., *People v. Erdelen* (1996) 46 Cal.App.4th 86, 91-92) to granting probation in both cases. Here, the plea agreement precluded a prison sentence and

10

required felony probation, but it did not restrict the trial court's discretion in awarding custody credits or sentencing on the misdemeanor petty theft.

As noted above, the probation report stated that defendant was entitled to custody credit of 245 days under sections 2900.5 and 4019 based on 123 actual days in custody. The report initially recommended reinstating probation in the misdemeanor case with a condition of 305 days jail reduced by 245 days credit, to be served consecutive to a 180-day jail condition of felony probation. When defendant pointed out that this would exceed the maximum six-month jail sentence for petty theft (§ 490), the probation officer offered a modified recommendation, which the trial court essentially adopted. The court sentenced defendant to 180 days jail in the misdemeanor case (eventually saying that probation was denied in an "open case" after initially saying that probation was "revoked and terminated") and allocated 180 days credit to that sentence, which was then deemed served. The remaining 65 days were credited toward the 365 days ordered in the felony case as a condition of probation. (E.g., *People v. Arnold* (2004) 33 Cal.4th 294, 300-301; *People v. Downey* (2000) 82 Cal.App.4th 899, 912 (*Downey*).)

On appeal defendant contends he should get the full 245 days of custody credit in the felony case for two reasons: the misdemeanor and felony sentences should be deemed concurrent, and he is entitled to dual credit even if the sentences are consecutive. He correctly acknowledges that review would be unavailable if it were his only issue on appeal. (§ 1237.1; *People v. Jacobs* (2013) 220 Cal.App.4th 67, 71, fn. 2.) The Attorney General initially conceded this point, but has filed opposition after acknowledging the concession was a mistake at oral argument this court requested.

Defendant asserts the sentences must be deemed concurrent under section 669, which provides in part: "(a) When a person is convicted of two or more crimes, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same judge or by different judges, the second or other subsequent judgment upon which sentence is ordered to be executed shall direct whether

the terms of imprisonment or any of them to which he or she is sentenced shall run concurrently or consecutively. . . . [¶] (b) . . . Upon the failure of the court to determine how the terms of imprisonment on the second or subsequent judgment shall run, the term of imprisonment on the second or subsequent judgment shall run concurrently."

The Attorney General questions the applicability of section 669, which requires a sentencing court to specify "whether the terms of imprisonment . . . shall run concurrently or consecutively" at the time of rendering a second or subsequent judgment "*upon which sentence is ordered to be executed.*" (Our italics.) In this case, the trial court granted felony probation as required by the plea agreement. The court did not order a second or subsequent sentence to be executed in the felony case, but rather it suspended imposition of a sentence.

Defendant asserts that *Downey*, *supra*, 82 Cal.App.4th 899 undermines a conclusion that the trial court implicitly imposed consecutive sentences. That case involved revocation of probation and imposition of a three-year upper term for cocaine possession consecutive to two misdemeanor terms of 180 days each for driving under the influence and possessing a concealed firearm in a vehicle. (*Id.* at p. 907.) The appellate court reversed the judgment based on the trial court's erroneous belief that the prison sentence had to be consecutive to the misdemeanors. (*Id.* at pp. 911-912.) The court also considered whether the misdemeanor terms were consecutive or concurrent to each other because the trial court said nothing on the topic. (*Id.* at pp. 913-914.) The Attorney General in *Downey* argued that the misdemeanor sentences were effectively consecutive because in awarding presentence credit, the trial court divided between the misdemeanors two distinct periods of custody that had already been served. (*Id.* at p. 913.) The reviewing court rejected the suggestion that those circumstances amounted to a judicial determination that any later sentences "should be served consecutively." (*Ibid.*) Instead, the court concluded that section 669 applied, making the misdemeanor sentences concurrent to one another. (*Downey*, *supra*, at pp. 912, 915.)

12

*Downey* is factually distinguishable. Unlike this case, there was no indication in *Downey* that the probation department recommended consecutive sentencing on the misdemeanors. Nor did the trial court in *Downey* divide a single period of custody between the cases as occurred here. We reject defendant's contention that the misdemeanor sentence must be deemed concurrent in these circumstances. (*People v. Edwards* (1981) 117 Cal.App.3d 436, 451-452 [consecutive sentencing implicitly intended].)

Defendant contends in a supplemental brief that it is impermissible to make a felony probation jail term consecutive to a misdemeanor sentence. He relies on *Fayad v. Superior Court* (1957) 153 Cal.App.2d 79 (*Fayad*) as the closest authority. Section 1203a provides that the maximum period of misdemeanor probation is either three years or the maximum sentence of imprisonment, if longer than three years. *Fayad* determined that the maximum period of probation for seven counts of petty theft was seven times the maximum 180-day sentence, not seven times three years. (*Fayed, supra,* at pp. 82-83.) It is in this context that the court stated that a sentencing court "is without authority to impose a series of separate and consecutive periods of probation." (*Id.* at p. 84.) *Fayad* is inapplicable since the trial court here did not purport to impose consecutive periods of *probation. People v. Ellestad* (1985) 168 Cal.App.3d 663 concluded that a state prison sentence may be imposed consecutive to an unrelated jail term. (*Id.* at pp. 665-666.) We see no reason why felony probation may not also be imposed consecutive to a jail term.

We turn to defendant's argument that he is entitled to dual credits because his presentence custody was entirely attributable to his latest crime. He relies on *People v. Williams* (1992) 10 Cal.App.4th 827 (*Williams*), *People v. Bruner* (1995) 9 Cal.4th 1178 (*Bruner*), and *People v. Kunath* (2012) 203 Cal.App.4th 906 (*Kunath*), but ignores the fundamental distinction that those cases involved concurrent sentences and the

13

application of the first sentence of section 2900.5, subdivision (b). (*Bruner, supra*, at pp. 1181-1182; *Kunath, supra*, at pp. 908, 911; cf. *Williams, supra*, at pp. 830-831.[6])

Section 2900.5 requires that a defendant receive credit for each day in presentence custody against his or her term of imprisonment. (*Id.*, subd. (a).) But "credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted. Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed." (*Id.*, subd. (b).)

In *Bruner*, the defendant was arrested for three parole violations, absconding from supervision, theft of a credit card, and a positive drug test. (*Bruner, supra*, 9 Cal.4th at p. 1181.) A search incident to arrest revealed his possession of rock cocaine. He remained in custody on a parole hold until his parole was revoked due to all four violations. He received full custody credit against his 12-month prison term. While in prison, the defendant admitted the new cocaine possession charge and received a 16-month prison term. Because the court failed to specify whether that sentence was concurrent or consecutive to time imposed for the parole violation, it was deemed concurrent under section 669. (*Bruner, supra*, at p. 1181.) As *Bruner* did not involve consecutive sentencing, it was not concerned with the second sentence of section 2900.5, subdivision (b). In discussing the second sentence, however, *Bruner* noted "there is no indication the 1978 amendment [adding the second sentence] was concerned with concurrent sentences for unrelated conduct imposed in *multiple proceedings*. By its terms, the amendment does no more than clarify that when consecutive terms are imposed for multiple offenses

---

[6] *Bruner* and *Kunath* expressly acknowledged the concurrent sentences under review. *Williams* did not describe the serial sentencing in that case as concurrent or consecutive, but due to the overlap of sentences, they were concurrent as explained in *Bruner, supra*, 9 Cal.4th 1178, 1182, fn. 3.

14

in a single proceeding, only one of the terms shall receive credit for presentence custody, while leaving undisturbed the accepted principle that when *concurrent* sentences are imposed at the same time, presentence custody is credited against all." (*Bruner, supra*, 9 Cal.4th at p. 1192, fn. 9.)

Here, although not explicitly stated, the record reflects the imposition of *consecutive* custody time in defendant's *two* cases, triggering the application of the second sentence of section 2900.5, subdivision (b), which prohibits awarding duplicate credit for a single period in custody attributable to multiple offenses when the resulting sentences are consecutive. (See *People v. Velasquez* (1984) 156 Cal.App.3d 477, 480, fn. 2; see also *In re Joyner* (1989) 48 Cal.3d 487, 489.)

We conclude that the trial court appropriately allocated 90 days actual custody (resulting in 180 total days credit) to defendant's misdemeanor case and allocated the remaining 33 days actual custody (65 total days credit) against the consecutive 365-day jail term of defendant's felony probation. There was no error requiring a modification of the trial court's credit awards.

## IV. DISPOSITION

The challenged probation conditions are ordered modified as follows:

"9. Not use or possess what you know or have reason to know is alcohol, an intoxicant, a narcotic, or other controlled substance without the prescription of a physician; not traffic in, or associate with persons you know, or have reason to know, to use or traffic in, narcotics or other controlled substances."

"14. Do not knowingly come within 100 yards of the victim, the victim's residence, place of employment, and any vehicle the victim owns or operates."

"15. Do not possess a tool that you know or have reason to know is used for the express purpose of facilitating a burglary or theft; such as, pry bars, screwdrivers, pick lock devices, universal keys or implements, or other such devices without the express permission of your supervising Probation Officer."

15

As so modified, the judgment is affirmed.

_____
Grover, J.

**WE CONCUR:**

_____
Bamattre-Manoukian, Acting P.J.

_____
Márquez, J.

16