Filed 2/27/13  In re Michael P. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re MICHAEL P., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>MICHAEL P.,<br><br>　　Defendant and Appellant. | F064438<br><br>(Super. Ct. No. 506734)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Nan Cohan Jacobs, Judge.

Kelly Lynn Babineau, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Leanne LeMon and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]　　Before Cornell, Acting P.J., Gomes, J. and Peña, J.

On June 2, 2009, appellant, Michael P., a minor, was adjudicated of committing a felony violation of Penal Code section 245, subdivision (a) (assault with a deadly weapon or by means of force likely to cause great bodily injury). On November 5, 2009, the juvenile court ordered appellant committed to the Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ), and declared his maximum term of physical confinement (Welf. & Inst. Code, § 731, subd. (c))[1] (MTPC) to be four years four months, based on the instant offense and another offense adjudicated in a prior wardship proceeding, less 267 days of custody credit. By a document filed December 23, 2011, the Stanislaus County Probation Department notified the juvenile court that appellant was discharged from the jurisdiction of DJJ on December 14, 2011, and requested that the court recall the DJJ commitment and return appellant to probation status.[2] On December 28, 2011, the juvenile court recalled appellant's DJJ commitment and placed him on probation, with various terms and conditions. At a subsequent hearing on February 10, 2012, the court determined appellant's probationary period to be 16.3 months, which it calculated by crediting appellant with 31.7 months (951 days) in custody against a total term of 48 months.

Appellant's sole contention on appeal is that the court erred in setting his probationary period. Specifically, appellant argues the court should have determined the probationary period by awarding him 1,542 days (51.4 months) against a total term of 52 months, for a total probationary period of .6 months. We reject appellant's argument, but find other error and remand for further proceedings.

---

[1]     Except as otherwise indicated, all further statutory references are to the Welfare and Institutions Code. We refer to section 731, subdivision (c) as section 731(c).

[2]     As set forth in more detail below, appellant had been placed, and on several occasions following violations of probation, continued on probation, prior to being committed to DJJ.

# DISCUSSION

This case concerns the application of recently enacted section 1766.01. Under that statute, where a minor has been committed to DJJ, the Juvenile Parole Board (the Board) may "discharge[] [the minor] from the jurisdiction of [DJJ] and permit[] his or her liberty under supervision of probation and subject to the jurisdiction of the committing court pursuant to [section 1766.01,] subdivision (c)." (§ 1766.01, subd. (b)(1).) Subdivision (c) of section 1766.01 provides, in relevant part, as follows: "The county of commitment shall supervise the reentry of any ward still subject to the court's jurisdiction and discharged from the jurisdiction of [DJJ]." (§ 1766.01, subd. (c)(1).) The juvenile court of the county of commitment must conduct a "reentry disposition hearing," the purpose of which is to allow the court to "identify those conditions of supervision that are appropriate under all the circumstances of the case and consistent with evidence-based practices." (§ 1766.01, subd. (c)(6).)

As indicated above, the Board discharged appellant from DJJ, and the juvenile court, following a reentry disposition hearing, placed appellant on probation. And, as also indicated above, the issue on appeal concerns the length of the period of probation supervision to which appellant is subject. Thus, we must answer the question: For a minor discharged from DJJ pursuant to section 1766.01 and returned to the county of commitment for probation supervision, what is the standard for determining the length of the period of such supervision? Once this question has been answered, the next question is whether the court correctly applied the applicable standard.

As we explain below, we conclude as follows: Under section 1766.01, a court must determine a ward's probationary period following discharge in the same manner it determines a ward's MTPC when it orders a ward committed to DJJ, i.e., by applying section 731. This is a two-step process in which the juvenile court first determines the maximum period an adult could be imprisoned for the same offense(s) for which the

3

minor was committed to DJJ. This sets the outside limit of the minor's period of confinement. The court then proceeds to the second step in which the court determines the ward's "maximum term of the physical confinement" (§ 731(c)), in the exercise of its discretion, upon consideration of the facts and circumstances of the offenses for which the minor is being committed. The MTPC may not exceed, and may be less than, the maximum period of imprisonment calculated in the first step of the analysis. Here, it is apparent that the court did not employ the analysis summarized above. Moreover, the record does not preclude the possibility that had the court done so, it would have, in the exercise of its discretion, arrived at a probation period less than the one it imposed. Because it appears the court was not aware of the scope of its discretion, the appropriate disposition is to reverse the probationary period set by the court and remand to allow the court to set the probationary period utilizing the proper standard.

We turn now to our explanation of these conclusions. To do so, we first explain why we apply the section 731 two-step analysis, and then we explain the correct application of this analysis to the instant case.

### *Why Section 731 Applies*

Although section 1766.01 provides that a minor's supervision on probation following discharge from DJJ is subject to the committing court's jurisdiction pursuant to subdivision (c) of section 1766.01, the statute is silent on the permissible length of the probationary period. However, an uncodified section of the legislation by which section 1766.01 was enacted provides, in relevant part: "It is ... the intent of Legislature that, upon their discharge from state jurisdiction, court jurisdiction over these wards be continued for a total period of time not exceeding the maximum periods of time set forth in Section 731 of the Welfare and Institutions Code." (Stats. 2010, ch. 729, § 25, p. 5098.) Given this statement of legislative intent, we interpret section 1766.01 to

4

require that the juvenile court utilize section 731(c) in determining the length of the probationary period for a minor discharged pursuant to section 1766.01.

### *How Section 731 Applies*

Section 731 provides, inter alia, that a juvenile court may order a minor adjudicated of any of certain enumerated offenses committed to DJJ, and contains the following provisions regarding the maximum periods of such commitments: "A ward committed to [DJJ] may not be held in physical confinement for a period of time in excess of the maximum period of imprisonment that could be imposed upon an adult convicted of the offense or offenses that brought or continued the minor under the jurisdiction of the juvenile court. A ward committed to [DJJ] also may not be held in physical confinement for a period of time in excess of the maximum term of physical confinement set by the court based upon the facts and circumstances of the matter or matters that brought or continued the ward under the jurisdiction of the juvenile court, which may not exceed the maximum period of adult confinement as determined pursuant to this section." (§ 731(c).)

Thus, section 731 provides that a juvenile court must make two distinct determinations regarding maximum time periods when committing a minor to DJJ. (*In re Carlos E.* (2005) 127 Cal.App.4th 1529, 1539 (*Carlos E.*).) First, the court must determine the "maximum period of imprisonment" for an adult convicted of the same offenses for which the minor is being committed to DJJ. (§ 731(c).) Next, the court must set a "maximum term of physical confinement" in DJJ. (*Ibid.*) In making this second determination, the court must exercise its discretion, "based upon the facts and circumstances of the matter ... that brought ... the ward under the jurisdiction of the juvenile court." (*Ibid.*) This maximum may not be more than the section 731(c) "maximum period of imprisonment" for an adult as determined first, but it may be less.

5

(*Carlos E.,* at p. 1542.) The court is "[not] restrict[ed]" to the "adult sentencing triad." (*Ibid*.)

Thus, we must first make the first of the two determinations required by section 731, and answer the following question: What is the section 731(c) "maximum period of imprisonment" for an adult convicted of the offenses for which appellant was committed to DJJ, viz., felony aggravated assault in violation of Penal Code section 245, subdivision (a)(1) and annoying or molesting a child under age 18 (Pen. Code, § 647.6), a misdemeanor?

Section 726 provides part of the answer. That statute provides that when a juvenile court "remove[s] [a minor] from the physical custody of his or her parent," the court must declare the maximum period the minor can be held in "physical confinement," which period may not exceed "the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court." (§ 726, subd. (c).) Further, and most relevant for our purposes, the statute defines "maximum term of imprisonment" for purposes of section 726 *and section 731*. (§ 726, subd. (c).)[3] Specifically, section 726, subdivision (c) provides: "If the court elects to aggregate the period of physical confinement on multiple counts, or multiple petitions, including previously sustained petitions adjudging the minor a ward within Section 602, the 'maximum term of imprisonment' shall be the aggregate term of imprisonment specified in subdivision (a) of Section 1170.1 of the Penal Code...." (§ 726, subd. (c).) Under Penal Code section 1170.1, a sentence for multiple felonies comprises the "principal" term, "subordinate" term, and any additional term imposed for applicable enhancements. The principal term

---

[3]     The phrase "maximum term of imprisonment" does not appear in section 731. Rather, the term used in section 731 is "maximum period of imprisonment." It is apparent that the two terms, although differing in one word, mean the same thing.

6

consists of the greatest term of imprisonment imposed by the court for any of the crimes. (Pen. Code, § 1170.1, subd. (a).) The subordinate term for each consecutive offense consists of one-third of the middle term of imprisonment prescribed for each other felony conviction. (*Ibid*.) Subordinate misdemeanor terms are calculated as one-third of the maximum term for such offenses. (*In re Eric J.* (1979) 25 Cal.3d 522, 536-538 (*Eric J.*).)

When we apply the foregoing principles to the instant case, the "maximum period of imprisonment" (§ 731(c)) consists of four years on appellant's adjudication of aggravated assault (Pen. Code, § 245, subd. (a)(1) [four years is maximum term]) plus four months on appellant's misdemeanor adjudication (Pen. Code, § 647.6 [one-year maximum term]; *Eric J.*, *supra*, 25 Cal.3d at pp. 536-538 [misdemeanor terms calculated as one-third of maximum]).

Our inquiry does not end here however. The final step in determining appellant's section 731(c) "maximum period of imprisonment" is to subtract from the period calculated above the correct number of days of time in custody for which appellant is to be credited. (Cf. *Eric J.*, *supra*, 25 Cal.3d at p. 536.) In order to determine appellant's custody credits, we must first summarize the relevant background, viz., the offenses of which appellant stands adjudicated and the time he spent in custody prior to his discharge from DJJ.

*Appellant's Offenses*

Appellant stands adjudicated of five offenses. He was initially adjudged a ward of the court on January 7, 2004, when he was 12 years old, following his admission that he committed a violation of Penal Code section 647.6 (annoying or molesting a child under age 18), a misdemeanor. The court placed appellant on probation.

Subsequently, appellant was readjudged a ward as follows: On March 4, 2005, based on his admission of his second offense, unlawfully causing fire to property (Pen. Code, § 452, subd. (d)), a misdemeanor; on August 31, 2006, based on his admission of

7

his third offense, second degree burglary (Pen. Code, §§ 459, 460, subd. (b)); and on November 21, 2007, based on his admission of his fourth offense, misdemeanor vandalism (Pen. Code, § 594, subd. (b)(1)). In each of these three instances, he was continued on probation.

Finally, as indicated earlier, appellant was ordered committed to DJJ following his admission of committing a felony violation of Penal Code section 245, subdivision (a)(1), his fifth offense. The court declared appellant's MTPC to be four years four months, consisting of four years based on only two of his offenses, viz., his 2009 felony aggravated assault adjudication and four months on his 2004 misdemeanor adjudication, less 267 days of custody credit. We refer to these two offenses collectively as the commitment offenses. The court did not include in appellant's MTPC time for any of appellant's other offenses.

*Periods of Confinement*

Between June 2004 and August 2008 appellant committed at least six noncriminal violations of probation.

A juvenile hall detention log (detention log), considered by the court at the reentry disposition hearing, shows that after suffering his first adjudication—for violating Penal Code section 647.6—and being placed on probation, appellant was in custody for three separate periods totaling 37 days—June 7, 2004, through June 18, 2004; June 29, 2004, through July 1, 2004; and August 11, 2004, through August 13, 2004—prior to committing his second offense. Thereafter, based on his second offense, he was confined in juvenile hall from February 18, 2005, through March 8, 2005, a period of 19 days.

As indicated above, appellant was continued on probation following his second adjudication, and thereafter, as a result of probation violations, he was confined in juvenile hall for the following periods: 31 days, from March 21, 2005, through April 20,

8

2005; 52 days, from September 28, 2005, through November 18, 2005; and 120 days, from January 27, 2006, through May 26, 2006.

The petition alleging appellant's third offense was filed July 21, 2006, and he admitted the allegation on August 31, 2006. He was subsequently confined in juvenile hall from September 6, 2006, through February 6, 2007, a period of 154 days.

Appellant was again taken into custody on October 19, 2007, and on November 6, 2007, he admitted allegations that he committed misdemeanor vandalism—his fourth offense—and that he violated his probation in all previous cases. He was confined in juvenile hall from October 19, 2007, through November 21, 2007, a period of 34 days.[4]

He was again taken into custody on April 14, 2008, and on April 16, 2008, he admitted violating his probation in all previous cases. He was confined in juvenile hall from April 14, 2008, through May 2, 2008, a period of 19 days.

Appellant was taken into custody on July 29, 2008, and a petition alleging a noncriminal violation of probation in all previous cases was filed the next day. The minor admitted the allegations on July 31, 2008, and on August 14, 2008, the court ordered appellant to serve 329 days in juvenile hall.

Appellant was serving that term when, on May 16, 2009, he committed his fifth offense. He was ordered committed to DJJ on November 5, 2009, and was transported to DJJ on December 23, 2009, where he remained through December 28, 2011. From July 29, 2008, through December 28, 2011, appellant was confined, either in juvenile hall or DJJ, for a period of 1,248 days.[5]

Appellant's total confinement time, in juvenile hall and DJJ, prior to release from DJJ, was 1,715 days.

---

[4]    The detention log incorrectly states this period totaled 33 days.

[5]    The detention log indicates, incorrectly, this period consists of 1,247 days.

*Analysis*

Two important points emerge from the foregoing summary: (1) some of appellant's time in custody, viz., his first 37 days in custody for probation violation following his first adjudication and prior to the commission of his second offense, and all days of DJJ confinement, are attributable solely to one or both of the commitment offenses; and (2) the remainder of his custody time is attributable, at least in part, to his other offenses.

In determining to what extent appellant's "maximum period of imprisonment" (§ 731(c)) must be reduced for time in custody where some of that time is attributable, at least in part, to offenses other than the commitment offenses, we are guided by our Supreme Court's decision in *People v. Bruner* (1995) 9 Cal.4th 1178 (*Bruner*). In that case, the court held that "where [an adult offender's] period of presentence custody stems from multiple, unrelated incidents of misconduct, such custody may not be credited against a subsequent formal term of incarceration if the prisoner has not shown that the conduct which underlies the term to be credited was also a 'but for' cause of the earlier restraint." (*Id.* at pp. 1193-1194.) Rather, as "a general rule ... a prisoner is not entitled to credit for presentence confinement unless he shows that the conduct which led to his conviction was the sole reason for his loss of liberty during the presentence period." (*Id.* at p. 1191.)

The court based this rule of "'strict causation'" (*Bruner*, *supra*, 9 Cal.4th at p. 1192) on Penal Code section 2900.5, which "provides that a convicted person shall receive credit against his sentence for all days spent in custody, including presentence custody (subd. (a)), but '*only* where the custody to be credited is attributable to proceedings related to the *same conduct* for which the defendant has been convicted' (subd. (b), italics added)." (*Bruner*, at p. 1180.) The court held that this statute "did not intend to allow credit for a period of presentence restraint unless the *conduct* leading to

10

the sentence was the *true and only unavoidable basis* for the earlier custody." (*Id.* at p. 1192.) The defendant in *Bruner* was not entitled to presentence credits, the court held, "[b]ecause defendant has not shown that he could have been free during any period of his presentence custody but for the same conduct that led to the instant conviction and sentence...." (*Id*. at p. 1195.)

The California Supreme Court has refused to hold this statute directly applicable to juvenile court proceedings (*Eric J.*, *supra*, 25 Cal.3d at pp. 533-535), although it concluded that juveniles are entitled to precommitment credit for time spent in physical confinement based on a construction of section 726, subdivision (c). (*Eric J.*, *supra*, 25 Cal.3d at p. 536.) However, although Penal Code section 2900.5 does not directly apply to juveniles, the California Supreme Court recognized in *In re Ricky H.* (1981) 30 Cal.3d 176 (*Ricky H.*) that juveniles, like adults, should receive credit only "'where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted.'" (*Id.* at p. 185, quoting Pen. Code, § 2900.5.) The court concluded in *Ricky H.* that the minor was not entitled to credit for a detention that "obviously was not attributable to proceedings related to the" latest offense. (*Ricky H.*, at p. 185.) And, in *In re Gustavo M.* (1989) 214 Cal.App.3d 1485, 1500 (*Gustavo M.*), the court explained: "A juvenile is entitled to credit for the time he was detained in juvenile hall pending resolution of charges against him. (... *Eric J.* [, *supra*,] 25 Cal.3d [at p.] 536.) However, he is not entitled to precommitment credits for time spent in juvenile hall on an unrelated commitment."

We conclude that, as suggested by *Ricky H.* and *Gustavo M.*, the *Bruner* approach is applicable here. And, when we examine the record and apply *Bruner* to the instant case, two salient points emerge. First, the detention log shows appellant was in custody in juvenile hall for violating his probation in his first case for three separate periods totaling 37 days, before he was taken into custody on February 18, 2005, for the conduct

11

underlying his second adjudication. Therefore, that custody time is solely attributable to an offense for which appellant was committed to DJJ, and he is entitled to custody credit for that time. Second, appellant was continued on probation following his 2005 adjudication of his second offense, and subsequent periods of confinement were based *in part* on violating probation *in that case*. Moreover, appellant later suffered his third and fourth adjudications, and subsequent periods of confinement preceding his commitment to DJJ in 2009 were also based, *in part*, *on those adjudications*. Thus, his confinement following his arrest for his second offense and preceding his DJJ commitment were attributable in part, but not solely, to his commitment offenses, and accordingly, he is not entitled to credit for that time.

The question that remains is whether appellant is also entitled to credit for his time in custody from November 5, 2009, the date he was committed to DJJ, through December 28, 2011, the last day he was confined in DJJ, a total of 784 days. Although *Bruner* deals with *presentence* custody, and here we consider whether appellant should be credited for the juvenile equivalent of *postsentence* custody, the principle underlying *Bruner*, i.e., that a person confined is entitled to credit for confinement time solely attributable to the conduct for which he or she is sentenced, applies. As the court stated in *People v. Buckhalter* (2001) 26 Cal.4th 20: "Everyone sentenced to prison for criminal conduct is entitled to credit against his term for all actual days of confinement solely attributable to the same conduct. ([Pen. Code,] §§ 2900, subd. (c), 2900.1, 2900.5, subds. (a), (b); see *Bruner*, *supra*, 9 Cal.4th 1178, 1180.)" (*Id*. at p. 30.) Appellant was committed to DJJ based on only the commitment offenses, and therefore, his time in custody following his commitment to DJJ is attributable solely to those offenses. In order to comply with the directive of section 731(c) that a minor may not be held in custody for a period of time in excess of the time an adult convicted of the same offenses as the minor could be confined

12

in prison, appellant must be credited for his time in custody following his commitment to DJJ.

*Conclusion*

On this record then, the first of the maximum periods required to be determined under section 731(c)—appellant's "maximum period of imprisonment"—is four years four months, less 821 days of custody credit (37 days of precommitment credit plus 784 days of postcommitment credit). As indicated above, under section 731, this first determination sets the ceiling for the next maximum period to be determined under the statute. The correct approach for a juvenile court determining the length of appellant's probationary period under section 1766.01 would be first to perform the foregoing analysis and then move to the second determination required by section 731(c), i.e., the determination, in the exercise of the court's discretion, of "the maximum term of physical confinement set by the court based upon the facts and circumstances of the matter or matters that brought or continued the ward under the jurisdiction of the juvenile court, which may not exceed the maximum period of adult confinement ...." (§ 731(c); see *Carlos E.*, *supra*, 127 Cal.App.4th 1529.)

It is apparent from the foregoing that appellant's claim that his probationary period, as a matter of law, should be set at four years four months, less 1,524 days of credit, is without merit. However, from an examination of the record it is also apparent, as we explain below, that the juvenile court's determination of appellant's probationary period—16.3 months, calculated by crediting appellant with 31.7 months (951 days) in custody against a total term of 48 months—cannot stand.

At the reentry disposition hearing, defense counsel argued as follows: Appellant was committed to DJJ based, in part, on his first offense, and all of his confinement time was attributable in part to violating probation imposed based on that offense. Therefore, appellant's probationary period should be calculated by subtracting from the maximum

13

term of imprisonment declared by the court upon appellant's 2009 commitment to DJJ—four years four months—*all* time appellant had spent in custody.

The juvenile court rejected this argument. The court stated the following: It would "treat the 245(a)(1) [appellant's fourth offense] as an independent event" for which appellant's time in custody must be "treat[ed] ... separately"; appellant's "max confinement time just for that one charge is 48 months"; following his arrest on that offense on May 29, 2009, he was confined, in juvenile hall and DJJ, for 951 days—or 31.7 months, calculated by dividing 951 by 30; and therefore his probationary period should be 48 months, less 31.7 months, i.e., 16.3 months.

The foregoing—notably, the court's apparent determination of four years, rather than four years four months, as the longest period of probation it could conceivably impose, and the absence of any mention of the uncodified statement of legislative intent of section 1766.01 or of section 731—demonstrates that the juvenile court did not determine appellant's probationary period by making the two determinations required by section 731(c). Accordingly, we will remand the matter to allow the court to determine the length of appellant's probationary period under section 731(c), as required under section 1766.01. (Cf. *People v. Brown* (2007) 147 Cal.App.4th 1213, 1228 ["Defendants are entitled to 'sentencing decisions made in the exercise of the "informed discretion" of the sentencing court,' and a court that is unaware of its discretionary authority cannot exercise its informed discretion"].)[6]

---

[6] We recognize that the probationary period ordered by the court—16.3 months—is less than appellant's section 731(c) maximum term of imprisonment, i.e., four years four months less 821 days, or slightly over 27 months, using the juvenile court's calculation method of dividing the applicable custody credits by 30. However, remand is appropriate because it is possible that on remand, the court, in the exercise of its discretion, may impose a probationary period of less than 16.3 months. We of course express no opinion as to how the court should exercise its discretion.

14

## DISPOSITION

The court's order setting appellant's probationary period at 16.3 months is reversed. The matter is remanded for a new reentry disposition hearing. At that hearing, the court shall set the length of appellant's probationary period by conducting the two-step process discussed here, as follows: The court shall first set appellant's Welfare and Institutions Code section 731, subdivision (c) (section 731(c)) "maximum period of imprisonment" at four year four months, less 821 days of custody credit. The court shall then set appellant's probationary period in the same manner it would set a maximum term of physical confinement under section 731(c), i.e., in the exercise of its discretion, after considering the facts and circumstances of the matters for which appellant was committed to the Department of Corrections and Rehabilitation, Division of Juvenile Justice. Appellant's probationary period may be less than, but may not exceed, the maximum period of imprisonment, and the court is not restricted by the sentencing triad for appellant's felony commitment offense.