Filed 4/10/13  P. v. Acosta CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H037807 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS092540) |
| v. | |
| STEVEN ACOSTA, | |
| Defendant and Appellant. | |

As part of a plea bargain, defendant Steven Acosta pleaded no contest to charges of possessing methamphetamine for sale (Health & Saf. Code, § 11378) and participating in a criminal street gang (Pen. Code, § 186.22, subd. (a)).[1]  Acosta also admitted to having a prior strike conviction (§ 1170.12, subd. (c)(1)).  In exchange for this plea, Acosta was to receive a sentence of no more than five years and four months in prison. At sentencing, after granting the prosecution's motion to reduce Acosta's conviction for participating in a criminal street gang to a misdemeanor, the trial court sentenced Acosta to 180 days on the misdemeanor charge, which was deemed served, and a consecutive four year sentence on the charge of possession for sale.  Acosta was granted total credits of 129 days, consisting of 85 days of custody credit and 44 days of conduct credit.

On appeal, Acosta contends he was entitled to credits for the one year period he spent in presentence custody while serving a parole violation.  In addition, he argues he is

---

[1] Further unspecified statutory references are to the Penal Code.

entitled to additional presence conduct credits under the October 1, 2011 amendment to section 4019, even though the charged offenses were committed on November 7, 2009.

We reject both arguments and shall affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

As Acosta pleaded no contest to the charges, we derive the facts from the transcript of the preliminary hearing and other documents in the record on appeal.

On November 6 and 7, 2009, Monterey County Sheriff Deputy Jesse Pinon conducted surveillance on a small shed located between two residences in Salinas, California. On the first day, Pinon saw six or eight people walk to the front door, get handed something by someone who resembled codefendant Rodney Sablan, then walk away.

At about 3:00 p.m. on November 7, Pinon resumed his surveillance of the shed and, after approximately one hour, he observed Acosta exit the shed. Acosta stood on the porch for a couple of minutes, then reentered the shed. As Pinon watched the shed that day, he observed three or four people separately walk up to the door of the shed, speak to someone inside, then leave, and Pinon believed that narcotics were being sold out of the shed.

At approximately 5:46 p.m., Pinon and other officers raided the shed. As the officers approached, Acosta ran from the shed to a nearby residence, where he was detained.

Inside the shed, officers found methamphetamine and evidence of narcotics sales, including a digital scale, empty baggies and pay/owe sheets. There was a police scanner tuned to the Salinas police frequency on a desk next to a laptop computer. A loaded, sawed-off .22 rifle was inside a storage bench in front of the desk. In addition, the officers located a clear plastic storage container labeled "Evil's shit." Pinon said, based on his prior contacts with Acosta, Acosta goes by the moniker "Evil" and is a Norteño gang member. Pinon also testified that Sablan is a self-admitted Norteño gang member.

2

In Pinon's opinion, the shed served as a stash house for Acosta and Sablan as a "non-address of record . . . to stash . . . narcotics, firearms, any other illegal contraband." At the time of his arrest, Acosta was on parole and was subject to a parole condition prohibiting him from associating with gang members. Acosta was also subject to a parole condition prohibiting him from possessing or having access to a police scanner.

On February 10, 2010, Acosta was charged by information with possession of methamphetamine while armed with a rifle (Health & Saf. Code, § 11370.1, count 1); being a felon in possession of a firearm (former § 12021, subd. (a)(1), count 2);[2] participation in a criminal street gang (§ 186.22, subd. (a), count 4); and possession of methamphetamine for sale (Health & Saf. Code, § 11378, count 5).[3] It was further alleged in the information that Acosta committed counts 1, 2 and 5 for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)); that Acosta was personally armed with a firearm during commission of the narcotics offenses (former § 12022, subd. (c));[4] and that Acosta had both a "strike" prior (§ 1170.12, subd. (c)(1)) and two prison priors (§ 667.5, subd. (b)).

On July 27, 2011, pursuant to a plea agreement, Acosta pleaded no contest to counts 4 and 5 and admitted the "strike" prior allegation with the understanding he would receive a sentence of five years and four months in prison. The matter was referred to the probation department for preparation of a "Credits Report Only."

---

[2] Former section 12021, subdivision (a)(1) was repealed operative January 1, 2012, but its provisions were reenacted without substantive change as section 29800, subdivision (a)(1). (See *People v. Correa* (2012) 54 Cal.4th 331, 334, fn. 1; Stats. 2010, ch. 711, § 4.)

[3] Sablan was charged jointly in the information with counts 1, 4 and 5. He was charged separately in count 3 of the information as being a felon in possession of a firearm (former § 12021, subd. (a)(1)).

[4] Section 12022 was repealed and added by Statutes 2010, chapter 711, sections 4 and 5, without substantive change to subdivision (c).

3

The probation report determined that Acosta was not entitled to credits from November 7, 2009 to November 7, 2010 as he was in custody for a parole violation during that period. The Board of Prison Terms determined there was probable cause that Acosta violated the terms of his parole by, among other things, being in possession of or having access to a police scanner and associating with a gang member.

Acosta brought a motion in the trial court, arguing that he was entitled to additional credits under *People v. Bruner* (1995) 9 Cal.4th 1178 (*Bruner*), as the criminal charges and his parole violation arose from the same conduct.

On January 12, 2012, after granting the prosecution's motion to reduce Acosta's conviction for participation in a criminal street gang to a misdemeanor, the trial court sentenced Acosta to 180 days (time served) for that offense and a consecutive four year term, consisting of the mid-term of two years doubled due to the prior "strike," on the charge of possession of methamphetamine for sale. Acosta was awarded 129 days of credits, consisting of 85 custody credits plus 44 conduct credits, which excluded the year he spent in custody on his parole violation.

## II.    DISCUSSION

### A.    *Acosta was not entitled to presentence credit for the parole violation term*

Section 2900.5, subdivision (a) provides in pertinent part: "In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, . . . all days of custody of the defendant, including days served as a condition of probation in compliance with a court order, . . . shall be credited upon his or her term of imprisonment . . . ." However, section 2900.5, subdivision (b) specifies, "credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted. . . ."

In *Bruner*, *supra*, 9 Cal.4th at page 1194, the California Supreme Court acknowledged that it is not always a straightforward matter to determine a defendant's entitlement to presentence credits under section 2900.5 where multiple proceedings are in

4

play.  For that reason, in order " 'to provide for section 2900.5 a construction which is faithful to its language, which produces fair and reasonable results in a majority of cases, and which can be readily understood and applied by trial courts.' " (*Bruner*, *supra*, at p. 1195), the *Bruner* court developed a rule of strict causation for cases where the same conduct is implicated in multiple proceedings.  Thus, "where a period of presentence custody stems from multiple, unrelated incidents of misconduct, such custody may not be credited against a subsequent formal term of incarceration if the prisoner has not shown that the conduct which underlies the term to be credited was also a 'but for' cause of the earlier restraint." (*Id.* at pp. 1193-1194.)  The *Bruner* court further approved of a number of decisions which reasoned that a prisoner's "criminal sentence may not be credited with jail or prison time attributable to a parole or probation revocation that was based *only in part* upon the same criminal episode." (*Id*. at p. 1191.)  To put it another way, "a prisoner is not entitled to credit for presentence confinement unless he shows that the conduct which led to his conviction was the sole reason for his loss of liberty during the presentence period." (*Ibid*.)

In *Bruner* a warrant issued for the defendant's arrest for three alleged parole violations:  absconding from parole supervision, theft of a credit card, and cocaine use based on a positive urine test. (*Bruner*, *supra*, 9 Cal.4th at p. 1181.)  When parole agents served the warrant, they found rock cocaine in the defendant's possession.  The defendant was cited for possession of cocaine and released on that charge on his own recognizance. Nonetheless, he remained in custody under a parole hold.  The Board of Prison Terms revoked the defendant's parole based on the three alleged violations and his possession of cocaine, and imposed a prison term of 12 months.  While the defendant was serving that term, he pleaded guilty to the charge that he possessed cocaine, and was sentenced to prison for 16 months.  The trial court found that the defendant was not entitled to any presentence custody credits on the current charge. (*Id*. at pp. 1181-1182.)  The defendant appealed and the Court of Appeal agreed in part with the defendant that he was entitled to

5

presentence custody credit, but only from the time of the formal parole revocation. (*Id*. at p. 1182.) The Supreme Court reversed the judgment of the Court of Appeal. (*Id*. at p. 1180.)

After acknowledging the potential unfairness of the strict causation rule it applied, the Supreme Court explained, "it arises from the limited purposes of the credit statute itself. The alternative is to allow endless duplicative credit against separately imposed terms of incarceration when it is not at all clear that the misconduct underlying these terms was related. . . . [S]uch credit windfalls are not within the contemplation of section 2900.5." (*Bruner*, *supra*, 9 Cal.4th at p. 1193.) Responding to the suggestion a rule of strict causation in these circumstances worked an undue hardship on defendants, the Court noted a "defendant's burden, while onerous, is not necessarily impossible." (*Id*. at p. 1193, fn. 10.) Thus, a defendant in custody on multiple causes, such as parole violations and new charges, bears the burden of establishing that he is entitled to presentence custody credits. (*Id.* at pp. 1193-1194.)

*People v. Stump* (2009) 173 Cal.App.4th 1264 (*Stump*) is particularly instructive on the application of *Bruner* to the facts of the instant case. In *Stump*, the defendant was convicted of driving under the influence of alcohol with a prior felony within 10 years (Veh. Code, § 23152, subd. (a)), and driving with a blood-alcohol content of at least .08 percent with a prior felony within 10 years (*id*. subd. (b)). Stump was arrested on July 16, 2006. At the time of his arrest he was on parole with special conditions prohibiting him from, among other things, drinking alcohol or driving without his parole officer's permission. Stump was found to have violated the terms of his parole not just by committing the two charged offenses, but also for drinking alcohol and not obtaining the permission of his parole officer before driving. (*Stump*, *supra*, at p. 1268.)

Stump was arraigned "with respect to the July 16, 2006 incident" on December 20, 2006 and remained in custody through the date of sentencing in May 2008. (*Stump*, *supra*, 173 Cal.App.4th at p. 1268.) He was awarded credits for the period of December

6

20, 2006, through sentencing, but denied credits for the period of his prearraignment custody (i.e., from July 16, 2006, through December 20, 2006).  (*Ibid*.)

On appeal, Stump challenged the court's failure to award credits for his prearraignment custody, asserting that this period, "was 'attributable to proceedings related to the same conduct for which' he was convicted" because "there was only one 'single, uninterrupted, incident of misconduct,' and '. . . a single episode of criminal behavior may [not] be parsed into separate acts in order to deny the award of credit for revocation custody . . . .' "  (*Stump*, *supra*, 173 Cal.App.4th at pp. 1268, 1271.)

The Fourth District Court of Appeal noted that *Bruner* was not "directly on point" because "[t]he decision in [that case], inasmuch as it addressed only a fact pattern with completely unrelated incidents--alleged parole violations and a subsequent cocaine possession--did not address a fact pattern such as the one before us, where all of the acts in question were temporally related."  (*Stump*, *supra*, 173 Cal.App.4th at p. 1271.)  The question presented, the court stated, was "how the *Bruner* 'but for' test should be applied when a defendant engages in a course of illegal conduct, such as drunk driving, that encompasses certain independent acts, none of which would be illegal per se, but each of which happens to be a separate ground for a parole violation, such as driving (without parole officer permission), or consuming alcoholic beverages in any amount?"  (*Ibid*.)

The court answered that question as follows:  "In the case before us, the conduct for which defendant was arrested gave rise to two drunk driving charges (violations of Veh. Code, § 23152, subds. (a), (b)).  It is not the case that 'but for' a drunk driving charge defendant would have been free of parole revocation custody.  He still would have been held for driving, which is not necessarily a crime in and of itself but may be, and was here, a parole violation.  Likewise, he still would have been held for consuming alcohol, which is not necessarily a crime in and of itself but may be, and was here, a parole violation. [¶] Penal Code 'section 2900.5 did not intend to allow credit for a period of presentence restraint unless the *conduct* leading to the sentence was the *true and only*

7

*unavoidable basis* for the earlier custody.' (*Bruner*, *supra*, 9 Cal.4th at p. 1192.) Here, the conduct of driving under the influence of alcohol, for which defendant was sentenced in the underlying action, was not the 'only unavoidable basis' for the custody. The act of driving without permission was a basis for the earlier custody. The act of drinking alcohol, irrespective of driving, was a basis for the earlier custody. ' "Section 2900.5 does not authorize credit where the pending proceeding has no effect whatever upon a defendant's liberty." [Citation.]' (*Id*. at p. 1184.)" (*Stump*, *supra*, 173 Cal.App.4th at p. 1273.)

Here Acosta would not have been free of custody "but for" the possession of methamphetamine for sale and participating in a criminal street gang charges. Like *Stump*, this is not a case in which the conduct leading to the sentence was the "*true and only unavoidable basis*" for the period of custody in question. (*Bruner*, *supra*, 9 Cal.4th at p. 1192.) Acosta violated his parole by, among other things, associating with a gang member (i.e., Sablan) and having access to a police scanner. Neither of those actions are illegal per se. For example, if police raided the shed in the good faith belief that drug sales were taking place on the premises, but instead found Acosta and Sablan simply watching television, with a police scanner on a nearby table, without any drugs, paraphernalia, firearms, etc., there would be no basis for charging him with drug or firearm offenses. Under the circumstances, Acosta would be guilty of nothing more than violating the aforementioned parole conditions. However, since he was not *merely* associating with a gang member in violation of his parole, but was associating with a gang member for the purposes of, among other crimes, selling drugs for the benefit of the gang, Acosta cannot establish that "but for" the drug, firearm and gang charges he would not have been in custody. Accordingly, the trial court properly denied him credits for the period from November 7, 2009 to November 7, 2010.

*B.      Acosta is not entitled to additional credits under section 4019*

A criminal defendant is entitled to accrue both actual presentence custody credits under section 2900.5 and conduct credits under section 4019 for the period of incarceration prior to sentencing.  Conduct credits may be earned under section 4019 by performing additional labor (§ 4019, subd. (b)) and by an inmate's good behavior.  (*id.* subd. (c).)  In both instances, section 4019 credits are collectively referred to as conduct credits.  (*People v. Dieck* (2009) 46 Cal.4th 934, 939, fn. 3.)  The court is charged with awarding such credits at sentencing.  (§ 2900.5, subd. (a).)

Before January 25, 2010, conduct credits under section 4019 could be accrued at the rate of two days for every four days of actual time served in presentence custody.  (Stats. 1982, ch. 1234, § 7, p. 4554 [former § 4019, subd. (f)].)  Effective January 25, 2010, the Legislature amended section 4019 in an extraordinary session to address the state's ongoing fiscal crisis.  Among other things, Senate Bill No. 3X 18 amended section 4019 such that defendants, with some exceptions,[5] could accrue custody credits at the rate of two days for every two days actually served, twice the rate as before.

Effective September 28, 2010, section 4019 was amended again to restore the presentence conduct credit calculation that had been in effect prior to the January 2010 amendments, eliminating one-for-one credits.  By its express terms, the newly created section 4019, subdivision (g), declared the September 28, 2010 amendments applicable only to inmates confined for a crime committed on or after that date.  (Stats. 2010, ch. 426, § 2.)

Thereafter, the Legislature amended section 4019 yet again, reinstituting one-for-one conduct credits and making this change applicable to crimes committed on or after

---

[5] The enhanced credits were not available to defendants required to register as a sex offender, those committed for a serious felony (as defined in § 1192.7), or those who had a prior conviction for a violent or serious felony.  (Stats. 2009-2010, 3d Ex.Sess., ch. 28, §§ 50, 62 [former § 4019, subds. (b), (c), & (f)].)

October 1, 2011, the operative date of the amendments. (§ 4019, subds. (b), (c), & (h).) Acosta committed his crimes on November 7, 2009, nearly two years before the effective date of this particular amendment.

In his opening brief, Acosta argued that pursuant to equal protection principles, the amendment to section 4019 that became effective October 1, 2011, must be retroactively applied to him. However, in his reply brief, he concedes that the California Supreme Court's decision in *People v. Brown* (2012) 54 Cal.4th 314, has foreclosed that line of attack. We agree. (See *People v. Kennedy* (2012) 209 Cal.App.4th 385, 396-397 [reasoning in *Brown* applies to version of § 4019 effective Oct. 1, 2011].)

However, Acosta maintains he is statutorily entitled to increased presentence conduct credits for the time in custody after October 1, 2011, though he acknowledges that the case on which he relies for this proposition[6] is no longer citable. We think the explicit language of the statute is clear: the 2011 amendment to section 4019 applies only to crimes that were "committed on or after October 1, 2011." (§ 4019, subd. (h).) Acosta, having committed his crimes on November 7, 2009, does not qualify for the credits available under the amended statute.

## III.  DISPOSITION

The judgment is affirmed.

Premo, J.

WE CONCUR:

Rushing, P.J.

Elia, J.

---

[6] *People v. Olague* (2012) 205 Cal.App.4th 1126, review dismissed March 20, 2013.

10