Filed 6/20/13  P. v. Woodward CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for
publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication
or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GREGORY JAMES NICHOLAS WOODWARD,<br><br>    Defendant and Appellant. | C070676<br><br>(Super. Ct. Nos. SF10226B,<br>    SF11187B, SF11316) |

This appeal is from three separate cases involving defendant Gregory James Nicholas Woodward.

FACTUAL AND PROCEDURAL BACKGROUND

The first case (SF10226A&B) arose when on June 25, 2010, defendant was discovered in possession of a stolen vehicle.  On November 4, 2010, he pled no contest to unlawful taking of a vehicle in exchange for a promise of probation upon the condition he serve up to 365 days in jail and dismissal of four additional drug related charges.  On December 27, 2010, he signed a written agreement (entitled "*Vargas* waiver"[1]) agreeing

---

[1]    The term "*Vargas* waiver" is derived from the case of *People v. Vargas* (1990) 223 Cal.App.3d 1107.

1

that if he did not appear at the sentencing hearing, the trial court could impose any lawful sentence, even if it was inconsistent with the plea agreement. On May 13, 2011, defendant did not appear and a bench warrant was issued.

The next day, May 14, 2011, officers recognized defendant during a traffic stop, searched him, and discovered he was under the influence of a stimulant and in possession of methamphetamine, and acetaminophen/propoxyphene (a schedule IV narcotic pain reliever) without a prescription. Defendant had been a passenger in the vehicle. The vehicle had been stolen.

In the second case (SF11187B) defendant was charged with possession of a controlled substance, two counts of receiving stolen property, two counts of failure to appear, being under the influence of a controlled substance, and unlawful taking of a vehicle.

On June 6, 2011, while released on bail and on probation with a condition he not possess any weapons, defendant was found carrying a sword, a metal "SAI" (martial arts weapon consisting of a pointed dagger and prongs), a double-headed axe, 17 knives, and a live round of .25-caliber ammunition. This resulted in the third case. He was charged with illegal possession of ammunition by a convicted felon, with allegations he committed the offense while released on bail, and that he has served a prior prison term.

On September 7, 2011, defendant appeared in court on all three cases (as well as several misdemeanor cases) -- on the first case for sentencing, on the second case for change of plea or trial setting, and on the third case for arraignment. Defendant stipulated to having been duly arraigned and said it was his intention to waive preliminary hearing and time for sentencing on the third case. The following summary of the trial court's and parties' understanding took place:

"THE COURT: So just to put the big picture into play, what I understand based upon our discussions in chambers and in the past many months has led us to this point where after he enters a change of plea in the balance of cases, several various counts and

2

others, and some misdemeanors cases, there will ultimately be a motion to dismiss those by the prosecution that we will set a sentencing date out a few months, allow a pass for him to enter and begin the residential treatment program that is part of the plan for him. And after he's been in there for several months we'll have a status date from which to see how far he's progressed to see whether he can be released to travel back here for imposition of sentence, and that sentence may depend on how he's progressing in the treatment program, in full or in part, because one of the conditions of the anticipated probation is that he's going to be waiving his custody credits if he fails to successfully complete the residential treatment program. Is that your understanding?

"THE DEFENDANT: Yes.

"THE COURT: So even though we're not going to sentence him today, it's the anticipated sentence at this point in time that generally the imposition of sentence will be suspended, he'll be placed on five years formal probation, that the balance of his custody time may be served in the residential treatment program with the additional terms and conditions of search and seizure, testing, seeking employment after he completes his residential outpatient transitional programming and other relevant terms of probation, but we will not be imposing those until we've had some proof and some time for you to begin your treatment program.

"And one of the reasons we're doing that is because we don't have probation here, we don't have an updated probation report, and that's going to take a month to six weeks to prepare. We don't have an accurate tabulation of your custody credits because it's complicated by the fact that arguably some of your time may have been served in Placer County, but it may or may not be allowed to credit against these cases, and we have a lot of circumstances where you're in custody on more than one case. So how we distribute those credits may have a significant impact; it may not, depending on how it goes.

"So that's my big picture understanding. Is that your client's understanding, Mr. Walker [defense counsel].

"MR. WALKER: Yes, it is.

"MR. PHILLIPS [prosecutor]: Yes. I would ask the Court to clarify because three different plea agreements from three different times, that the defendant understands that if that he absconds from this program the Court can sentence him straight to prison.

"MR. WALKER: And, really, I think -- again, I talked to my client about it and the way I think the Court has made it clear if Mr. Woodward is not capable or willing to successfully complete any impatient program as determined by the Court, then the Court could sentence him to State prison. So, in other words, Mr. Woodward understands that he's completely on the hook, so to speak, to this Court and the requirements."

The trial court then clarified the arrangement to defendant as follows:

"THE COURT: Mr. Woodward, just so you understand, by agreeing to go into this program, if you decide this isn't working or you and you fail on the program, you're exposing yourself to three separate felony cases where State prison is the likely sentence in each case individually. So you understand that your choices are successfully complete the program or pretty much resign yourself to a State prison commitment --

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: -- in one or all three cases."

The trial court then explained that he would need to contact his attorney and get an order allowing him to leave the program prior to leaving before its completion. The trial court then stated:

"THE COURT: Right. So Mr. Woodward, I'm going to go through this plea form in [the second case], and the same rights and the same discussion will apply to [the third case]. However, we'll go through the actual pleas and address the waivers separately, but all these -- the entire discussion applies to both cases.

"THE DEFENDANT: All right."

After reviewing the charges, maximum potential sentences, and defendant's rights, the trial court accepted defendant's change of plea of no contest to unlawful driving of a

4

vehicle and possession of a controlled substance in the second case, and to possession of ammunition in the third case, in exchange for dismissal of the remaining counts and allegations. The trial court said the maximum term for the second case was four years eight months and did not recite any promise or agreement for probation. It did not recite any maximum, promised or agreed-upon sentence for the third case, although both defense counsel and the prosecutor explained that it had been agreed that the charge would not be reduced to a misdemeanor pursuant to Penal Code[2] section 17, subdivision (b), unless defendant successfully completed felony probation.

Written change of plea forms for the second and third cases were submitted to the court and defendant waived time for sentencing. The written change of plea form for the second case indicated defendant would receive three years of formal probation and up to 365 days in jail. The prosecutor, however, signed the form indicating he did *not* agree with the terms of the plea or indicated sentence therein. The written change of plea form for the third case stated it was an "open plea" and recited the agreement that no reduction pursuant to section 17, subdivision (b) would be permitted unless defendant completed probation. The prosecutor signed the form indicating his agreement to the terms therein. The box providing that the plea would convert to an open plea upon any subsequent failure to appear was not initialed on any of the plea forms.

At the conclusion of the oral change in plea on the third case, the prosecutor interjected, "Your Honor, in this case we don't need a *Vargas* waiver because it's an open plea, but the Court should probably clarify with the defendant that he understands if he absconds, he should expect to go straight to prison when he comes back before the court." The trial court responded, "I think we stated that. [¶] And you understand that, Mr. Woodward?" Defendant replied, "Yes, Your Honor" and his counsel added, "For the

---

[2]     Further undesignated statutory references are to the Penal Code.

record, You Honor, his lawyer does as well." The trial court then postponed sentencing to permit defendant to enroll in a residential drug treatment program.

The following day, however, it was discovered that Placer County had a no-bail hold on defendant and would not agree to his release. Defendant was transferred to Placer County to resolve his cases in that county. Nevada County then revoked defendant's status of released on his own recognizance so upon resolution of the Placer County cases, defendant would be returned to Nevada County. Nonetheless, Placer County released defendant and defendant entered into the residential treatment program.

Defendant was returned on the warrant on January 20, 2012. He had been terminated from the residential program for misbehavior. The trial court ordered an updated probation report and, on March 6, 2012, proceeded to sentencing.

Prior to pronouncing sentence, the trial court noted that it had reviewed the probation report and had discussed the case "in conference" with the prosecutor and defense counsel on several occasions. It also noted that the parties had agreed that probation would be denied. The court then sentenced defendant to an aggregate term of five years as follows: on the second case -- the middle term of three years for unlawful driving of a vehicle and a consecutive eight months for possession of a controlled substance; on the first case -- a consecutive eight months for unlawful taking of a vehicle; on the third case -- a consecutive eight months for possession of ammunition. Defendant was awarded 362 days of custody credit.

Defendant appeals. He obtained a certificate of probable cause. (§ 1237.5.)

DISCUSSION

I

*Introduction*

Pursuant to *People v. Wende* (1979) 25 Cal.3d 436, counsel filed an opening brief that sets forth the facts of the case and asked this court to review the record and determine whether there are any arguable issues on appeal. Defendant Gregory

6

Woodward was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing of the opening brief. Defendant filed a supplemental brief contending he should be permitted to withdraw his plea in the second case and that he is entitled to additional custody credits for time served in Placer County custody. We requested supplemental briefing from counsel on whether defendant should be permitted to withdraw his plea in the second case. We address these issues, in addition to undertaking a review of the record as required by *Wende*, and affirm.

II

*Withdrawal Of Plea In Second Case*

Defendant contends he must be permitted the opportunity to withdraw his plea in the second case because he entered the plea with the promise of probation and his prison sentence exceeded the terms of the agreement.

Section 1192.5 provides in part: "Where the plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on the plea to a punishment more severe than that specified in the plea and the court may not proceed as to the plea other than as specified in the plea. [¶] If the court approves of the plea, it shall inform the defendant prior to the making of the plea that (1) its approval is not binding, (2) it may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter, and (3) in that case, the defendant shall be permitted to withdraw his or her plea if he or she desires to do so."

In what is commonly known as a *Cruz* waiver (or similarly, a "*Vargas* waiver"), the parties prearrange an agreement wherein the defendant waives his rights under section 1192.5 in the event a certain condition, such as failure to appear at sentencing, should occur "such that . . . the trial court may withdraw its approval of the defendant's plea and impose a sentence in excess of the bargained-for term." (*People v. Cruz* (1988)

7

44 Cal.3d 1247, 1254, fn. 5.) In *People v. Vargas, supra,* 223 Cal.App.3d 1107, the appellate court upheld an arrangement wherein the defendant agreed in a plea agreement to be sentenced to a two-year term if he appeared for sentencing and a five-year term if he failed to appear for sentencing. Such arrangements for increased sentences are permissible if made part of the plea agreement. (*People v. Masloski* (2001) 25 Cal.4th 1212, 1217-1223; see also *People v. Jensen* (1992) 4 Cal.App.4th 978, 981-984.) The trial court cannot, however, unilaterally impose a sanction for nonappearance in the form of an increased sentence exceeding that which was negotiated as part of the plea agreement. (*Masloski,* at pp. 1217-1223.)

Defendant contends he was promised probation as a term of his plea agreement in the second case and, therefore, the trial court's imposition of a prison term was in violation of the terms of his agreement. He contends that, to the extent imposition of the prison sentence was based on defendant's agreement that his failure to complete residential treatment would convert the plea to an open plea, that agreement cannot be enforced absent an advisement of the right to withdraw his plea should the trial court subsequently disapprove of its terms.

Initially, we observe that it is not clear that defendant was ever "promised" probation as a term of his plea agreement -- whether it be three years, as set forth on the written change of plea form not agreed to by the prosecutor, or five years as the trial court recited as the anticipated sentence depending on how defendant was progressing in the treatment program. In any event, it was clarified prior to defendant's entry of his no contest plea that the parties had agreed sentencing would be postponed to permit him to enter into a residential treatment program but that if he failed the program, he would be sentenced to state prison on all three cases. While the terms of this "*Vargas* waiver" were repeated at the prosecutor's request after defendant entered into his no contest pleas, this is not a case where the trial court unilaterally and subsequently imposed such a condition of release upon the defendant. The terms of the "*Vargas* waiver" here were

8

clearly contemplated and agreed upon by the parties as part of the plea agreements in both the second and third cases.

Contrary to defendant's contention, the trial court's failure to advise defendant of his right to withdraw his plea should the court subsequently disapprove of its terms, as required by section 1192.5, is of no consequence. The trial court did not disapprove of the plea agreement when it imposed the prison sentence but rather, imposed prison as a consequence of defendant's termination from the residential treatment program, as provided for by the terms of the plea agreement. Because the trial court acted in accordance with the terms of the plea agreement, the provisions of section 1192.5 that permit defendant to withdraw his plea if the court withdraws approval of the agreement were not implicated. (*People v. Masloski*, *supra*, 25 Cal.4th at pp. 1223-1224.)

III

*Placer County Conduct Credits*

In his supplemental brief, defendant states: "While I was in Placer County I was fighting [the first case] in Nevada County at the same time. I should receive credits for both cases. I did not." Defendant is not entitled to dual custody credit.

Section 2900.5 provides, in pertinent part: "(a) In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including . . . any time spent in a jail, . . . including days served as a condition of probation in compliance with a court order, . . . shall be credited upon his or her term of imprisonment, . . . [¶] (b) For the purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted. Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed."

9

In *Bruner*, our Supreme Court rejected the defendant's request for credits against his drug sentence for time already served and credited on the parole revocation term, ruling that "when presentence custody may be concurrently attributable to two or more unrelated acts, and where the defendant has already received credit for such custody in another proceeding," defendant must demonstrate that "but for" the charge on which he was convicted and for which he seeks credits, he would have been free during the presentence period. (*People v. Bruner* (1995) 9 Cal.4th 1178, 1180).) The high court reasoned that section 2900.5 was "intended only to prevent inequalities in total confinement among defendants, each similarly sentenced in a *single proceeding*, which inequalities arise solely because one defendant suffered presentence confinement while another did not. Section 2900.5 is not intended to bestow the windfall of duplicative credits against all terms or sentences that are separately imposed in multiple proceedings." (*Bruner,* at p. 1191.) Accordingly, the court concluded: "[W]hen presentence custody may be concurrently attributable to two or more unrelated acts, and where the defendant has already received credit for such custody in another proceeding, the strict causation rules . . . should apply." (*Id.* at p. 1180.)

Here, defendant received credit for his Placer County custody time in his Placer County case. He has failed to demonstrate that, but for his activities which gave rise to the charges in the first case, he would have been free, or at least bailable, during that presentence period. (*People v. Bruner, supra,* 9 Cal.4th at p. 1180.) Because he cannot show that the sole reason for his loss of liberty during his period of confinement in Placer County were the charges in the first case, he is not entitled to dual custody credit for that time. (See *People v. Mendez* (2007) 151 Cal.App.4th 861, 864-865.)

IV

*Review Of Record Pursuant To Wende*

Having also undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to defendant.

10

DISPOSITION

The judgment is affirmed.


      ROBIE     , J.


We concur:


     NICHOLSON   , Acting P. J.


     DUARTE    , J.

11