Filed 11/5/14  P. v. Stringer CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JULIAN DAVID STRINGER,<br><br>        Defendant and Appellant. | A139504<br><br>(Contra Costa County<br>Super. Ct. No. 041659549) |

Julian Stringer appeals from a judgment of conviction and sentence imposed after he entered guilty pleas to charges of first degree robbery and voluntary manslaughter.  He contends the trial court's calculation of presentence custody credits (Pen. Code, § 2900.5) violated his plea agreement and, even independent of the plea agreement, he is entitled to more credits than the court awarded.  Respondent disagrees and urges that the matter be remanded for the trial court to determine whether Stringer was actually awarded too many credits.  We will affirm the judgment.

## I.  FACTS AND PROCEDURAL HISTORY

On March 13, 2008, Stringer was paroled from prison, where he had been incarcerated for crimes unrelated to these proceedings.  According to records of the California Department of Corrections and Rehabilitation (CDCR), this parole was suspended on April 8, 2008, effective March 27, 2008, with the notation "Rtn to Prison for Fu[r]ther Proceedings."  Because one of the grounds for later revoking Stringer's parole was his act of absconding from parole supervision (see *post*), it appears this suspension was due to Stringer absconding from parole.

1

Before Stringer could be apprehended and returned to prison, he committed the crimes charged in these proceedings. On April 17, 2008, while armed, he perpetrated residential burglary, robbery, and other crimes against victims Homer Winkle, Soraya Rebeles, and Lance Rebeles. In June 2008, he shot and killed victim Ralph Morales.

A. *Stringer's Arrest and Incarceration July 24-November 6, 2008*

On July 24, 2008, Stringer was arrested in Nevada. A parole hold was promptly imposed on July 25, 2008, and he was transported to San Quentin State Prison, where he arrived on August 12, 2008.

At Stringer's parole revocation hearing on September 16, 2008, revocation was sought based on his alleged acts of murder, use of a firearm, and "[a]bsconding parole supervision." Stringer signed an "optional waiver" at the hearing, which allowed the Board of Parole Hearings (BPH) to determine at a later date, without a formal hearing, whether Stringer violated his parole. (See *People v. Kennedy* (2012) 209 Cal.App.4th 385, 390 (*Kennedy*); Cal. Code Regs., tit. 15, § 2641, subd. (b).) Based on this waiver, Stringer was reinstated on parole effective July 25, 2008. BPH noted that Detective Santos appeared at the revocation hearing and stated that charges would definitely be filed against Stringer, there was a delay due to several recent homicides in Antioch, and robbery charges might be added as well.

On September 30, 2008, the district attorney filed a felony complaint against Stringer in regard to the murder of Morales.

On October 7, 2008, BPH rescinded the optional waiver action and revoked Stringer's parole as of the revocation hearing date of September 16, 2008. A notation of "11 mos" in the CDCR records indicates the revocation resulted in an additional 11 months of incarceration. The record does not specify that the charge of "absconding parole supervision" had been dismissed or was otherwise not a partial basis for the revocation.

Stringer remained in San Quentin State Prison until November 6, 2008, when he was transferred to jail in Contra Costa County to face prosecution for the charges in this case.

2

B. *Charges, Plea Agreement, and Sentence*

By an information filed in December 2009, Stringer was charged with the Morales murder (Pen. Code, § 187) and possessing a firearm as a felon (former § 12021, subd. (a)(1)).[1] It was further alleged that Stringer personally used a firearm in the course of the murder (§ 12022.53, subds. (b)-(c)) and had served a prior prison term (§ 667.5, subd. (b)).

By an information filed in June 2010, Stringer was charged in connection with the residential burglary and robbery. Specifically, the information alleged that he perpetrated kidnapping for purposes of robbery (§ 209, subd. (b)), first degree residential robbery (§ 212.5, subd. (a)), carjacking (§ 215, subd. (a)), and first degree burglary (§ 459). It was further alleged that Stringer bound his victims (§ 1170.84) and personally used a firearm (§ 12022.53). As to the burglary, it was alleged that someone other than an accomplice was present (§ 667.5, subd. (c)(21)). The information also alleged that Stringer had served a prior prison term (§ 667.5, subd. (b)).

In August 2012, after a trial in the Morales murder case, a jury found Stringer guilty of being a felon in possession of a firearm, but could not reach a verdict on the murder charge.

On March 11, 2013, Stringer resolved all of the charges in the two informations by entering into a written plea agreement, by which he would plead guilty to first degree residential robbery (§ 211), admit a firearm enhancement (§ 12022.5), and plead guilty to voluntary manslaughter (§ 192). As relevant here, line 19 of the plea agreement contained the following statement initialed by Stringer: "I have credit for 1,699 actual days served through today," followed by the handwritten annotation "From 7-24-08."

At the plea hearing on April 2, 2013, the court asked the prosecutor to recite the terms of the plea bargain. The prosecutor did so, without any mention of presentence custody credits. Stringer's attorney did not object. Nor did she contend that the plea bargain required presentence custody credits to commence as of July 24, 2008. Rather,

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

defense counsel stated that she had "the credits written [in the plea agreement] as of back on March 18," so she would "give the actual credits when we do the sentencing." As of March 18 (2013), she clarified, Stringer had served "1,692" actual days. The prosecutor and the court agreed it would make sense to calculate the actual credits at the time of sentencing.

At the sentencing hearing on July 29, 2013, the court sentenced Stringer to 15 years in state prison, as set forth in the plea agreement. The court also stated, "So let's talk about [Stringer's] credits then." Stringer's attorney responded, "I'm going to request that your Honor at least give him some credit for the time that he was in prison after his arrest on this case." By this, defense counsel argued that the calculation of presentence custody credits should begin as of the date of Stringer's arrest in Nevada on July 24, 2008. The trial court rejected this proposal, ruling that Stringer was not entitled to receive presentence custody credits in this matter until November 6, 2008, the day he was transferred from San Quentin State Prison to the Contra Costa County jail, because his incarceration between July 24 and November 6 was not due solely to the current charges (murder and robbery), but due in part to his prior act of absconding from parole. The court explained: "[D]efendant is entitled to full actual and conduct credit for parole or probation revocation time if revoked solely because of the current crime. If the revocation is due to any other cause, the defendant is not entitled to any credits against the new custody term." Although defense counsel objected to the November 6 date, counsel did not mention the July 24 annotation in the plea agreement or contend the plea agreement required the calculation to start on July 24.

This appeal followed.

## II. DISCUSSION

Stringer contends the court erred by calculating his presentence custody credits from the date of his transfer from state prison to Contra Costa County jail (Nov. 6, 2008) rather than the date of his arrest (July 24, 2008). This was erroneous, he urges, because (1) his plea agreement provided that the time would be calculated from July 24, 2008; and (2) regardless of the plea agreement, July 24 was the appropriate start date under the

4

law.  As a result, Stringer argues, he should have been awarded at least 1,825 days actual time credit and 273 local conduct credits, for a total of 2,098 days, rather than 1,726 days actual time credit and 258 local conduct credits, totaling 1,984 days.[2]

A.  *Whether the Calculation of Credits Violated the Plea Agreement*

"A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles.  [Citations.]  'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties.'  [Citation.]  If contractual language is clear and explicit, it governs.  [Citation.]"  (*People v. Shelton* (2006) 37 Cal.4th 759, 767.)  We assume the parties to the agreement read and understood the writing before it was presented to the trial court for approval.  (*People v. Toscano* (2004) 124 Cal.App.4th 340, 344.)

The plea agreement contained the language:  "I have credit for 1,699 actual days served through today . . . [f]rom 7-24-08."  This language is ambiguous.  One reasonable interpretation, advocated by Stringer, is that Stringer had 1,699 actual days served *because* the calculation was to begin on July 24.  This would suggest that a term of the plea agreement was that credits would be calculated from July 24.  However, another reasonable interpretation, akin to respondent's position, is that Stringer was asserting he had 1,699 actual days served *if* the calculation were to begin on July 24—that is, counting

---

[2]  Respondent makes a number of counter-arguments we find unpersuasive.  For example, respondent argues that Stringer waived his challenge to the calculation of credits because he agreed to give up his right to appeal his conviction and sentence, "except for the issue of credits."  But since the waiver did not include the issue of credits, the issue of credits was not waived.  Respondent also argues that Stringer's appeal was based on his sentence or other matters occurring after the plea that do not affect the validity of the plea, and therefore Stringer cannot now argue that the trial court violated the plea bargain.  However, Stringer is not contending that his plea agreement is invalid, but that it should be *enforced* (according to his interpretation).  Lastly, respondent points out that Stringer did not contend at the sentencing hearing that the court's calculation of his credits was inconsistent with the plea agreement.  Stringer responds that if this constituted a waiver, his counsel was ineffective.  We need not address this issue, since we decide the appeal on a ground other than waiver.  In any event, defense counsel's silence may reasonably be explained by the fact that the plea agreement was not intended to set July 24 as the firm date for presentence custody credits to begin.

5

from July 24, he had been in custody 1,699 days. Under this interpretation, the parties were not fixing the start date for the calculation of custody credits to be July 24, but were leaving the calculation for the sentencing hearing under prevailing law.

Because the plea bargain is reasonably susceptible to both of these interpretations, we must resolve the ambiguity by other means. In this case, the clearest indication of the parties' intent is the manner in which they addressed the credit issue at the ensuing hearings.

At the plea hearing, the prosecutor's oral statement of the plea terms contained no mention of presentence custody credits, let alone a July 24 start date. Defense counsel did not mention the matter as a specific term of the agreement at the plea hearing, and the court and the parties agreed to postpone the credits calculation until sentencing.

Moreover, at the sentencing hearing, no one—not the court, Stringer, Stringer's attorney, the prosecutor, or anyone else—ever suggested that the start date for the calculation of presentence custody credits was fixed by the plea agreement as July 24, even though the defense hotly contested the court's decision to use the start date of November 6. If, in fact, Stringer or his attorney understood the plea agreement to require a credit commencement date of July 24, counsel would not have merely "*request*[*ed*] that your Honor at least give him *some* credit for the time that he was in prison after his arrest"; instead, counsel would have insisted that the plea agreement *compelled* credits for the *entirety* of that period. From this evidence, it may reasonably be inferred that the parties did not believe the plea agreement required the calculation to begin on July 24.

Stringer has failed to establish that the court's award of credits beginning on November 6, 2008, constitutes a breach of his plea agreement.

B. *Whether the Credit Calculation Violated the Law*

Under section 2900.5, subdivision (b), "credit shall be given only where the custody to be credited is attributable to the proceedings related to the same conduct for which the defendant has been convicted." Thus, "section 2900.5 did not intend to allow credit for a period of presentence restraint unless the conduct leading to the sentence was

6

the true and only unavoidable basis for the earlier custody." (*People v. Bruner* (1995) 9 Cal.4th 1178, 1192, italics omitted (*Bruner*) [no presentence credit for custody as a parole violator, where custody was based not only on the offenses leading to the subject sentence, but also on an unrelated ground]; see *People v. Mendez* (2007) 151 Cal.App.4th 861, 864 [credit can be applied only to a sentence arising from the conduct that was the "sole reason for his loss of liberty" during the presentence period].) It is the defendant's burden to establish that the conduct leading to the sentence was a "but for" cause of the presentence custody. (*Bruner, supra*, 9 Cal.4th at p. 1180; *Kennedy, supra*, 209 Cal.App.4th at p. 392.)

Before Stringer was arrested and taken into custody on July 24, 2008, his parole had already been suspended, ostensibly due to his act of absconding from parole supervision. Therefore, his time in custody between his July 24 arrest and his November 6 transfer to Contra Costa County jail on the murder and robbery charges was not solely due to the murder and robbery charges, but also due to his absconding from parole. Furthermore, Stringer has not established that he is unable to receive custody credit for this period against his increased term for absconding from parole. Accordingly, he is not entitled to presentence custody credits for the July 24-November 6 period against his sentence in this case. (*Bruner, supra*, 9 Cal.4th at pp. 1180-1181, 1192.)

Stringer insists that the sole cause of his custody upon arrest was the Morales murder charges, because the arrest occurred with the assistance of Antioch police, based on a warrant that Antioch police had obtained in connection with the murder. Further, Stringer asserts, the statement of Detective Santos at the revocation hearing confirms that the current charges were the sole basis for his custody. The detective's statement was summarized by BPH as follows: "Detective Santos appeared and stated that charges will definitely be filed by the D.A. in this case. Probably next week. The reason the filing was delayed was because there were several recent homicides in Antioch. He also has supplemental robbery charges pending that the police and D.A. wanted to combine."

Stringer's argument is unconvincing. While it is true that Antioch police participated in the arrest based on the warrant, the record also shows that Stringer's

parole had been suspended already, and the United States Marshall's Office and "state parole" were the ones who actually tracked Stringer to Nevada. And while the detective's statement to BPH confirms that Stringer was being held due to the Morales murder, it does not show that he was being held *solely* due to the Morales murder, rather than his preexisting parole violation. Thus, substantial evidence still supports the court's factual finding that Stringer was held at San Quentin State Prison from July 24 to November 6 on the basis of the absconding violation as well as the murder and robbery charged in this case.

Also unpersuasive is Stringer's reliance on *Kennedy, supra,* 209 Cal.App.4th 385. There, the defendant was arrested on criminal charges as well as a technical parole violation based on his possession or use of alcohol. (*Id*. at pp. 389-390.) Like Stringer, he signed an optional waiver of his parole revocation hearing; but unlike Stringer, he later requested a revocation hearing at which the technical parole violation was dismissed. (*Id*. at pp. 390-391.) Because the technical violation was dismissed, the sole basis for the defendant's parole revocation and presentence custody was the criminal charges. The defendant had therefore established that the conduct leading to his sentence was a but-for cause of his presentence custody, entitling him to credit for the entire period of his presentencing incarceration. (*Id*. at pp. 392, 394.)

In the matter before us, the technical parole violation alleged against Stringer was not dismissed. His parole revocation was sought on the ground of absconding from parole (as well as murder and firearm use), and there is no indication the absconding charge had been dismissed or dropped by the time parole was revoked. It therefore remained part of the basis for his presentence custody.

Stringer fails to prove that his current charges were the sole cause of his presentence custody from July 24 to November 6, or that he cannot receive credit for that custody against his sentence for any other charge. He therefore fails to establish that he is entitled to presentence custody credits commencing July 24, 2008, in this case.

8

C. *Prosecutor's Request for Remand*

Respondent contends that Stringer actually received too many credits because the proper start date was not November 6, 2008, but some later date. Specifically, respondent argues that Stringer's parole was revoked as of September 16, 2008, with the notation "11 mos," indicating that the revocation resulted in an additional 11-month term until August 2009. Since Stringer's parole revocation was due at least in part to his absconding from parole, this 11-month period of incarceration is too. Therefore, respondent maintains, because Stringer was in custody for absconding parole and not just the murder and robbery charges until August 2009, the court erred in awarding Stringer credits beginning in November 2008. (See *In re Bustos* (1992) 4 Cal.App.4th 851, 853-855 [when presentence incarceration is due in part to a parole revocation based on grounds other than the new offense, no presentence credits may be granted on the new charge because of the parole hold].) Respondent asks us to remand the matter for the trial court to recalculate Stringer's credits and strike any excess credits previously awarded.

Respondent, however, did not raise this argument at the sentencing hearing. Nor did it object to the trial court's implicit factual determination that Stringer's transfer to local custody on November 6 was for the purpose of holding him thereafter on the charges in this case alone. Respondent has waived its argument or, at least, failed to establish cause for remand.

## III. DISPOSITION

The judgment is affirmed.

_____

NEEDHAM, J.

We concur.

_____

JONES, P. J.

_____

BRUINIERS, J.